478 A.2d 1324

**Nancy VOTEDIAN and Richard J. Votedian, her husband, Appellants,**

v.

**GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, a Corporation.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1983.

Filed June 8, 1984.

14

Ronald L. Muha, Pittsburgh, for appellants.

Warren D. Ferry, Pittsburgh, for appellee.

Before ROWLEY, WIEAND and HESTER, JJ.

WIEAND, Judge:

Where a policy of automobile insurance provides unequivocally that underinsured motorist coverages on several vehicles shall not be accumulated or stacked to increase the insurer's maximum liability for any one accident, may the provisions of the policy be ignored because of "reasonable expectations" of the insured or because the limitation in the contract of insurance is violative of public policy? The trial court found that the policy provision was effective to limit the insurer's liability. We affirm.

Richard Votedian and his wife, Nancy, were the owners of two automobiles, both of which were covered by a policy of automobile insurance issued by General Accident Fire and Life Assurance Corporation. For an additional premium of five ($5.00) dollars for each vehicle, the insurance company agreed to provide protection against uninsured and/or underinsured motorists,[1] with a liability limit of $30,000.00. The policy provided, with respect to this coverage, as follows:

"The limit of liability shown in the Schedule for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. Covered persons;

---

1. The policy defined an underinsured vehicle as one "to which a bodily injury liability or bond applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage."

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

However, the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."

Nancy Votedian was seriously injured in a vehicular accident involving a motorist who carried liability coverage having a limit of $15,000.00. This sum was paid in full by the tortfeasor's insurance carrier. Alleging damages in excess of $75,000.00, the Votedians made a claim for $60,-000.00 against their own carrier, General Accident, under the underinsured motorist coverage provided by the policy. The insurance company tendered a check for $15,000.00 which, it contended, was the maximum it was required to pay under the terms of the policy.

The Votedians commenced an action for declaratory judgment. Because their policy provided coverage for two vehicles, they contended that the limits of underinsured coverage should be accumulated or stacked to provide underinsured coverage to the extent of $60,000.00. General Accident, relying upon the language of the policy, contended that its maximum liability was $30,000.00, which had to be reduced by the sum of $15,000.00 previously paid by the tortfeasor's insurance company. Motions for summary judgment were filed by all parties and resulted in the entry of judgment in favor of the insurance carrier. The Votedians appealed.

When we undertake to interpret a policy of insurance, as is true in interpreting other contracts as well, our goal is "to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to

give effect to that language." *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (citations omitted).

 The language of the policy in this case is clear and unambiguous. The limit of the insurer's liability is $30,-000.00; it shall not be required to pay more no matter how many vehicles are covered or premiums paid. Unless this provision violates public policy, it must be given effect. A court is not justified in deviating from the plain language of the policy except in rare instances. The import thereof cannot be avoided because appellants failed to read it or did not understand it. Contrary suggestions by this Court in *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974) and its progeny were expressly disapproved by the Supreme Court in *Standard Venetian Blind Co. v. American Empire Insurance Co., supra.* To hold that an insured has a "reasonable expectation" that he will be able to stack coverage when the policy expressly prohibits stacking is disingenuous, if not absurd. *Antanovich v. Allstate Insurance Co.*, 320 Pa.Super. 322, 339, 467 A.2d 345, 354 (1983), *allocatur granted*, No. 274 W.D. Allocatur Docket 1983 (February 10, 1984).

Appellants contend that clauses which attempt to prevent the cumulation or stacking of underinsured coverage are violative of public policy and, therefore, void and unenforceable. They rely on decisions which have declined to enforce language attempting to prevent the stacking of limits of liability in policies providing uninsured motorist coverage. Those decisions hold that clauses prohibiting the accumulation of uninsured motorist coverages are void because repugnant to purposes and policies established by the Uninsured Motorist Act.[2] It was this Act which required that each motor vehicle liability policy contain uninsured motorist coverage. *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 337–338, 473 A.2d 1005, 1010 (1984); *State Farm Mutual Automobile Insurance Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978); *Marchese v. Aetna Casualty*

**2.** Act of August 14, 1963, P.L. 909, § 1, as amended, 40 P.S. § 2000.

*and Surety Co.*, 284 Pa.Super. 579, 426 A.2d 646 (1981); *Sones v. Aetna Casualty and Surety Co.*, 270 Pa.Super. 330, 411 A.2d 552 (1979).

 Underinsured motorist coverage is not the same as uninsured motorist coverage. The Uninsured Motorist Coverage Act does not require underinsured motorist coverage; the statute contains no reference to and does not seek to regulate policies which provide underinsured motorist coverage. See: *Davis v. Government Employees Insurance Co.*, 500 Pa. 84, 454 A.2d 973 (1982); *Spencer v. State Farm Mutual Automobile Insurance Co.*, 319 Pa.Super. 226, 465 A.2d 1312 (1983); *McDonald v. Keystone Insurance Co.*, 313 Pa.Super. 404, 408, 459 A.2d 1292, 1294 (1983); *Obdyke v. Harleysville Mutual Insurance Co.*, 299 Pa.Super. 298, 302, 445 A.2d 763, 765, *aff'd*, 500 Pa. 107, 454 A.2d 984 (1982); *Kitchen v. Automobile Insurance Co.*, 299 Pa.Super. 256, 258–259, 445 A.2d 552, 553 (1982); *Young v. United States Fidelity & Guaranty Co.*, 299 Pa.Super. 237, 240–241, 445 A.2d 542, 544 (1982), *appeal dismissed*, 500 Pa. 233, 455 A.2d 635 (1983). In enacting the Uninsured Motorist Coverage Act, the legislature "intended only to create a means to provide minimum coverage to persons injured by financially irresponsibile [sic] motorists carrying less than the legal minimum or no insurance. Our legislature did not intend to provide additional insurance to those who although they suffered severe injury had recourse to at least the legal minimum of insurance through the other motorist." *McDonald v. Keystone Insurance Co., supra*, 313 Pa.Superior Ct. at 408, 459 A.2d at 1294. See also: *Davis v. Government Employees Insurance Co., supra*, 500 Pa. at 89, 454 A.2d at 975.

 The legislature has not by statute established a policy which compels the writing of underinsured motorist coverage.[3] An insurance company is wholly free to issue a

**3.** The Motor Vehicle Financial Responsibility Law, enacted February 12, 1984 and effective October 1, 1984, requires that future motor vehicle liability insurance policies contain both uninsured and underinsured motorist coverage. See: 75 Pa.C.S. § 1731(a).

policy of automobile liability insurance which contains no protection whatsoever against underinsured motorists. Although companies, for an additional premium, may undertake to write such coverage, the underinsured motorist feature is purely optional. An insured may purchase such coverage or he may decline to pay the premium charged therefor and accept a policy which contains no such coverage. When underinsured motorist coverage is included, the terms and limitations thereof are not controlled by statute or by public policy but by the agreement reached by the parties. That agreement, as expressed in the policy of insurance, may place limitations upon underinsured motorist coverage, subject only to the requirement that the limitation be clearly worded and conspicuously displayed.

In *Antanovich v. Allstate Insurance Co., supra,* this Court held that the policy established by the legislature with respect to uninsured motorist coverage was different from and, therefore, inapplicable to insurance coverage provided pursuant to the No-Fault Motor Vehicle Insurance Act. Although it cannot be said that the decision in *Antanovich* is determinative of the present case, it does suggest that, except as provided by pertinent statute, there is no general policy in this Commonwealth which prevents a writer of automobile insurance from inserting in its policies a limitation which prevents stacking.[4] If an insured motorist desires to purchase greater or even unlimited underinsured motorist coverage, he can undoubtedly do so by tendering an increased premium. A court, however, will not rewrite an agreement reached by the parties which prevents the cumulation of liability limits according to the number of vehicles insured. The limitation on stacking

---

4. The legislature has provided in the recently enacted Motor Vehicle Financial Responsibility Law that first party benefits, which include medical costs, income loss, etc., "shall not be increased by stacking the limits of coverage of: (1) multiple motor vehicles covered under the same policy of insurance; or (2) multiple motor vehicle policies covering the individual for the same loss." 75 Pa.C.S. § 1717 (effective October 1, 1984).

contained in the instant policy violated no public policy; and, therefore, the contract must be enforced according to its express and unambiguous terms.

■ For similar reasons we must give effect to the policy provision which requires a set-off for sums previously paid by persons legally responsible to pay damages. The limit of appellee's liability is $30,000.00, but reduced by the sum of $15,000.00 previously paid on behalf of the tortfeasor legally responsible for appellee's damages. The language of the policy is clear; it is not ambiguous. When it provides that the insurer's "limit of liability shall be reduced ..." by payments made, that is what it means. It will not be rewritten, as appellant argues, to provide only that "the insured's damages should be reduced" by such payments. To do so would disingenuously twist the clear manifestation of the parties as expressed in the unambiguous provisions of their agreement.

We recognize, as did the Supreme Court in *Davis v. Government Employees Insurance Co., supra,* "the 'oft cited anomaly that those in the position of these claimants would find themselves in a better position were the tortfeasor's vehicle totally uninsured, rather than underinsured.' This anomaly, however, stems from the fact that the Legislature has chosen not to require insurance coverage for those instances in which a tortfeasor's insurance is insufficient to satisfy the injured party's claims." *Id.,* 500 Pa. at 91, 454 A.2d at 976. (citation omitted). Since the legislature has not chosen to establish a policy with respect to underinsured motorist coverage, the clear language of the policy which prevents stacking must be followed.

The disputed provisions in the insurance contract between the parties have been clearly and unambiguously written. The trial court properly gave effect to the language thereof. We can do no less.

Judgment affirmed.