## Conrad v. Progressive Casualty Insurance Company

*Richard M. Serbin,* for plaintiff.
*William R. Tighe,* for defendant.

SMITH, *J.,* May 28, 1987—On August 31, 1985, plaintiff, Adam Conrad, was injured when Montrose McMahon improperly turned his automobile into the path of plaintiff's motorcycle. As a result of the accident, plaintiff suffered severe and permanent injuries. Thus far, plaintiff has incurred medical bills in excess of $75,000, and he has been advised that he will need further surgery.

After the accident, Travellers Insurance Company, Mr. McMahon's insurer, indicated that it was willing to offer in settlement Mr. McMahon's policy limits of $50,000. After receipt of this offer and pursuant to the underinsured motorist provisions in his policy, plaintiff made a claim on his insurance carrier, defendant herein, for $50,000. Defendant denied plaintiff's claim, asserting that pursuant to the terms of the underinsured motorist provisions in plaintiff's insurance policy, it owed no money to plaintiff. Thereafter, plaintiff filed an action for declaratory judgment. Defendant filed preliminary objections to plaintiff's complaint.

At oral agrument on the preliminary objections, both parties agreed that the most efficacious and judicially economic way of resolving the legal issues

in this matter would be to submit it to the court in the form of cross motions for judgment on the pleadings. Subsequent to oral argument, defendant withdrew its preliminary objections and filed a motion for judgment on the pleadings, and in response thereto, plaintiff filed its motion for judgment on the pleadings. Both motions are presently before this court.

The question at issue here is whether, under the provisions of the Pennsylvania Financial Responsibility Law, defendant is entitled to reduce the underinsured motorist benefits conferred by its own policy by the amount paid on behalf of a third-party tortfeasor. Defendant asserts that under the terms of the policy which it issued to plaintiff, any sum which it owes to plaintiff pursuant to the underinsured motorist provisions of that policy must be reduced by the $50,000 which plaintiff received from Mr. McMahon's insurance carrier. In support of its assertion, defendant relies upon an offset clause included in the underinsured motorist provisions of plaintiff's policy. The offset clause states:

"All amounts payable under this part will be reduced by:

"(1) A payment made by the owner or operator of the uninsured/underinsured motor vehicle or any other person or organization legally liable."

It is clear from the underinsured motorist provisions in plaintiff's insurance policy that defendant's assertion is correct. What is less clear, however, is whether the above-quoted portion of plaintiff's insurance policy is contrary to public policy and hence unenforceable.

In commencing our discussion of the questions at issue in this matter, we note that the question of whether a tortfeasor is an underinsured motorist is

dependent on the relevant state statute. The current statutory definitions in various jurisdictions provide for either "gap" coverage or "excess" coverage.

Under "gap" coverage, the tortfeasor is under-insured when his liability limits are less than a specified policy limit of the insured (either underinsured motorist, uninsured motorist, or liability limit). To determine the amount of the insured's underinsured motorist recovery, *the limits of the tortfeasor's policy are deducted from the insured's policy limits.*

Under this approach, the insured's total recovery (both liability and underinsured motorist) will not exceed the insured's policy limits (unless the tortfeasor's liability limits exceed the insured's UIM limits). Also, the insured's total recovery can never exceed the sum of all damages incurred.

This is known as gap coverage because the underinsurance fills in the "gap" between the tortfeasor's limits and the insured's limits.

In situations where "excess" coverage exists, *the tortfeasor is underinsured when the tortfeasor's liability limits are less than the insured's total damages.* In determining recovery, the tortfeasor's liability policy acts as primary coverage, and the insured's underinsured motorist policy acts as secondary coverage. Total recovery is limited only by the extent of the insured's total damages. This is known as "excess" coverage because the underinsurance is excess over the tortfeasor's liability policy.

In resolving this dispute we are mindful that insurance contracts are not purely private matters between insurance companies and their insureds; rather, there is a public interest in automobile liability insurance contracts and that is the protection of innocent victims of automobile accidents.

*Brakeman v. Potomac Insurance Company,* 472 Pa. 66, 371 A.2d 193, 198 (1977). The tendency has been that if we should err in ascertaining the intent of the legislature or the intendment of an insurance policy, we should err in favor of coverage for the insured. *Heffner v. Allstate Insurance Company,* 265 Pa. Super. 181, 187, 401 A.2d 1160, 1162-63 (1979), affirmed 491 Pa. 447, 421 A.2d 629 (1980). It is hornbook law that insurance policies are to be construed most strictly against those who draft them. *Lovering v. Erie Indemnity Company,* 412 Pa. 551, 195 A.2d 365, 368 (1963).

Finally, "courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, *or lack thereof,* inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), *the public has a right to expect that they will receive something of comparable value in return for the premium paid." Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 388 A.2d 1346, 1353-54 (1978), cert. denied, 439 U.S. 1089 (1979). (emphasis supplied)

The Motor Vehicle Financial Responsibility Law, 75 P.S. §1701 et seq., governs this case. Section 1731 prohibits the issuance and delivery of any motor vehicle liability insurance policy unless underinsured (as well as uninsured) motorist coverage is provided.[1] This clear legislative mandate is unaccompanied, however, by an equally clear defi-

---

1. Section 1731 further states:

"Underinsured motorist coverage shall provide protection for persons who suffer injury, arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles."

nition of underinsured coverage. We are required to refer back to section 1702 which defines "underinsured motor vehicle" as one "for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages."

Because of the dearth of caselaw in Pennsylvania on this issue,[2] defendant has cited several cases from other jurisdictions to support its contention that the offset clause contained in the underinsured motorist provisions of plaintiff's policy should be enforced. However, we find none of these cases to provide us guidance in deciding the instant matter.[3]

---

2. Plaintiff's claim that the Superior Court's ruling in *Houston v. National Mutual Insurance Company,* 358, Pa.Super. 618, 518 A.2d 311 (1986) supports his position is unpersuasive. In *Houston,* the Superior Court merely held that the appellant had not alleged the type of errors which would permit the court to modify or vacate an arbitrator's award under the Uniform Arbitration Act, 42 P.S. §7301 et seq. The decision of the arbitrators was not upheld as being a correct legal interpretation, but rather the Superior Court agreed with the trial court's determination that under the provisions of the Uniform Arbitration Act, the courts lacked the authority to consider the issue.

3. Four of the cases cited by the defendant, *Infante v. Texas Farmers' Insurance Co.,* 640 S.2. 2d 321 (1982), *Mantanye v. Transamerica Insurance Co.,* 630 S.W. 2d 518 (1982), *Muller v. Allstate Insurance Co.,* 627 S.W. 2d 833 (1981), and *American General Fire & Cas. Co. v. Oestreich,* 617 S.W. 2d 833 (1981), were decided in Texas. In each of the four cases, the court ruled that under Texas law the offset clauses were enforceable. However, in the aforementioned four cases, the courts were interpreting the Texas Insurance Statute, a statute markedly different from its Pennsylvania counterpart.

Defendant has also cited *Glazewski v. Allstate Insurance Co.,* 466 N.E. 2d 1151 (1984), in support of its position. In *Glazewski,* plaintiffs brought a class-action suit against several insurance companies alleging, among other things, that the underinsured motorist benefits offered by the insurance companies were illusory and therefore constituted fraud. Plaintiffs

It is argued by defendant that the recent Superior Court decision in *Sparler v. Fireman's Insurance Company of Newark, New Jersey,* 360 Pa. Super 597, 521 A.2d 433 (1987) favors his position. We have carefully scrutinized *Sparler,* and we conclude that it does not control our holding in the instant matter.

A close examination of *Sparler* reveals that the insurance policy at issue in that case was issued *prior to* enactment of the Pennsylvania Financial Responsibility Law. Moreover, the incident giving rise to that litigation occurred more than a year before the Financial Responsibility Law was enacted. *Sparler* was decided solely on an interpretation of the terms of an insurance agreement issued under the Pennsylvania No-fault Motor Vehicle Insurance Act. 40 P.S. §1009. The court did not, therefore, consider the legislative and policy implications of the now-effective Pennsylvania Financial Responsibility Law. Thus, *Sparler* is not controlling.

Defendant contends that when 75 P.S. §§1702 and 1731(c) are read together, they merely provide the means for determining *whether a motor vehicle is underinsured.* In light of the fact that the legisla-

---

further complained that the insurance companies had violated the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1983, ch. 121½ par. 312) and the Illinois Insurance Code. The trial court dismissed plaintiff's complaint with prejudice and plaintiffs appealed. The appellate court held in relevant part that plaintiffs' complaint stated a cause of action against the insurance companies for fraud, that the complaint stated a cause of action for violation of the Uniform Deceptive Trade Practices Act, and that the trial court had properly dismissed the count which alleged that the insurance companies had violated provisions of the Illinois Insurance Co. We do not find *Glazewski* to be of any aid in interpreting the Pennsylvania statute.

ture has neglected to address the manner in which underinsured motorist benefits are to be calculated, defendant argues that the contracting parties are free to arrive at any method of calculation not contrary to public policy. More specifically, defendant claims that the offset clause contained in the underinsured motorist provisions of the plaintiff's policy is not contrary to public policy. In support of its position, the defendant relies upon *Votedian v. General Accident Fire & Life Assn. Co.,* 330 Pa.Super. 13, 478 A.2d 1324 (1984), a case decided under the old Uninsured Motorist Coverage Act, 40 P.S. §2000 et seq. (repealed), wherein the court in giving effect to offset clauses stated:

"The language of the policy is clear, it is not ambiguous. When it provides that the insurer's 'limit of liability shall be reduced . . .' by payments made, that is what it means. It will not be rewritten . . . to provide only that 'the insured's damages should be reduced by such payments.' To do so would disingenously twist the clear manifestation of the parties as expressed in the unambiguous provisions of their agreement." *Id.* at 20, 478 A.2d at 1328.

Defendant contends that under the principles of statutory construction, there is a presumption that the legislature was familiar with the interpretation which the courts placed upon the Uninsured Motorist Coverage Act.[4] It is argued by defendant that in light of this presumption and in light of the legislature's failure to provide a method for calculating underinsured motorist benefits, the new act must be interpreted as being harmonious with the old law. Cf. *Troupiansky v. Henry Disston & Sons,* 151 F.Supp. 609, 611 F.N. 3 (E.D. Pa., 1957) and *Truck*

4. See *Raymond v. School District of City of Scranton,* 186 Pa.Super. 352, 142 A.2d 740, 751 (1958).

*Terminal Realty Co. v. Commonwealth Department of Transportation,* 486 Pa. 16, 403 A.2d 986, 989 (1979). Based upon the foregoing, the defendant reasons that this court is bound by the body of caselaw developed under the old Uninsured Motorist Act and must therefore follow the ruling enunciated in *Votedian v. General Accident Fire & Life Co., supra.* We disagree.

While it is true that the court validated the use of offset clauses in *Votedian, supra,* it is also true that the court based its decision on the *uninsured* motorist's statute then in effect, 70 P.S. §2000. The court specifically noted that the legislature had chosen not to establish a policy with respect to *underinsured* motorist coverage, stating:

"[T]hose in the position of these claimants would find themselves in a better position were the tortfeasor's vehicle totally uninsured rather than underinsured. This anomaly, however, stems from the fact that *the legislature has chosen not to require insurance coverage for those instances in which a tortfeasor's insurance is insufficient to satisfy the injured party's claims." Id.* at 20, 478 A.2d at 1328. (emphasis supplied)

Uninsured coverage and underinsured coverage are conceptually distinct. The ills they are intended to cure are likewise different. Furthermore, we believe it to be significant that both the court in *Votedian* and our legislature in its definition of "underinsured motor vehicle" chose to speak in terms of *insufficiency* to satisfy a party's losses.

The American Heritage Dictionary of the English Language defines *insufficient* as: "Not sufficient; inadequate." It defines *sufficient* as: "As much as is needed; enough; adequate. . . ."

The legislative mandate to insurance carriers issuing motor vehicle insurance policies in Pennsyl-

vania was to provide coverage to insureds for those cases when third party liability limits were inadequate or not enough to satisfy an injured parties' losses. A determination of inadequacy can only be made by reference to the injured party's losses and damages.

Were we to follow the defendant's argument to its logical extension, anytime an insured receives third party benefits which are equivalent to or which exceed the limits of the underinsured motorist benefits in his own policy, he will be unable to recover those benefits, even if his injuries and damages exceed the third party's limits of liability. We believe that such an interpretation and application of the Motor Vehicle Financial Responsibility Law would render the underinsured motor vehicle coverage illusory, since its very existence would be dependent upon the entirely fortuitious circumstance of what a third party tortfeasor's liability limits happen to be.

In enacting the Motor Vehicle Financial Responsibility Law, the legislature clearly intended to enact a policy with respect to underinsured motorists. Had the legislature desired to perpetuate the court's ruling in *Votedian, supra,* it would not have included the underinsured motorist provisions in the act. "Where words of a later statute differ from those of a previous one on the same subject they presumably are intended to have a different construction." *Parik v. Didra,* 370 Pa. 488, 88 A.2d 730 (1952). Furthermore, "[i]t is a fundamental rule of statutory construction that the general assembly does not intend an absurd or unreasonable result." *Schaefer v. Hilton,* 473 Pa. 237, 244, 373 A.2d 1350, 1353 (1977). In view of the foregoing, we conclude that defendant's interpretation of the statute is unreasonable and that the plaintiff is correct when he asserts that the offset provision in his insurance policy is void, as

is contrary to public policy.[5]

In light of the foregoing opinion, we now enter the following

## ORDER

And now, this May 28, 1987, the above-captioned matter having come before the court on defendant's motion for judgment on the pleadings and on plaintiff's cross-motion for judgment on the pleadings, and the court having duly considered all the pleadings herein and the arguments of counsel, it is hereby ordered, directed and decreed that defendant's motion for judgment on the pleadings is denied and dismissed. It is further ordered, directed and decreed that plaintiff's cross-motion for judgment on the pleadings be and hereby is granted.

---

5. Although the appellate courts of this jurisdiction have not yet ruled on the issue which is currently before this court, we note that this issue was recently addressed by the Court of Common Pleas of Washington County in *Estate of White v. Westfield Insurance Company and Erie Insurance Company,* No. 2060 of 1986. In that case, defendant Westfield Insurance Company sought to avoid paying the plaintiff underinsured motorist benefits by claiming that the offset clause which it had inserted into the underinsured motorist provisions of plaintiff's policy, relieved it from any duty to pay such benefits. Westfield argued that *Votedian, supra,* should control the case. Our distinguished colleague, the Honorable Samuel Rodgers, disagreed, and citing section 1731 of the new act, held that the legislature had equated underinsured motorist's insurance with uninsured motorists and that the offset provision contained in plaintiff's policy with Westfield was invalidated by public policy.