**Adam H. HERZIG and Anne H. Herzig**

v.

**AETNA CASUALTY &
SURETY COMPANY.**

No. 88–762.

United States District Court,
E.D. Pennsylvania.

Aug. 5, 1988.

Martin B. Pitkow, Philadelphia, Pa., for plaintiff.

Michael Saltzburg, Philadelphia, Pa., for defendant.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

This action involves a dispute between an insurer, Aetna Casualty and Surety Company ("Aetna"), and insureds, Adam and Anne Herzig, over the interpretation of an underinsured motorist provision and the application of an arbitration clause contained in an automobile liability insurance policy issued by Aetna to the Herzigs. The Herzigs commenced this action by filing a petition in state court for the appointment of an arbitrator for the defendant and for certain fees and costs. Thereafter, Aetna removed this action to federal court pursuant to 28 U.S.C. § 1332, and filed an answer to plaintiffs' petition and counterclaim for declaratory and injunctive relief. Aetna now moves this court to enter summary judgment in its favor. The insureds have filed a response in opposition and seek a declaratory judgment that Aetna is required to arbitrate this matter pursuant to its policy of insurance.

The following facts are undisputed: On October 12, 1983, plaintiff, Anne Herzig, sustained personal injuries while a passenger in a car involved in a collision with an automobile operated by David Lamar and owned by Marvin Lamar. The automobile insurance carrier for Lamar, Sentry Insurance Company ("Sentry") paid to Anne and Adam Herzig its policy limit of $100,000. Sentry allocated payments to plaintiffs in the amount of $97,776.65 to Anne Herzig for bodily injuries, and $2,223.35 to Adam Herzig for property damage.

At the time of the accident, the plaintiffs were insured under an Aetna automobile insurance policy containing an "underinsured motorist coverage" provision which states in pertinent part:

> We will pay damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by a covered person and caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.
>
> We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

. . . . .

"Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

Following the accident, the Herzigs filed a claim under their own policy of insurance with Aetna on the ground that the vehicle driven by Lamar was an underinsured motor vehicle. Upon the parties failure to agree on the claim, plaintiffs demanded arbitration pursuant to the arbitration clause of the underinsured motorist coverage provision of the policy. Said clause provides:

If we and a covered person disagree whether that person is legally entitled to recover damages from the owner or operator of an underinsured motor vehicle or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs, and bear the expenses of the third arbitrator equally.

Aetna refused to appoint an arbitrator and plaintiffs filed suit in state court to compel arbitration.

Plaintiffs contend that Anne Herzig is entitled pursuant to the underinsured motorist coverage provision of the Aetna policy to recover proceeds for bodily injuries sustained in the accident with the Lamar vehicle and which allegedly exceed $200,-000. Plaintiffs further argue that in accordance with said provision both parties are required to arbitrate any dispute which may arise regarding liability under the provision.

In moving for summary judgment, Aetna, contends that the Lamar vehicle does

not come within the definition of "underinsured motor vehicle" as defined in the Aetna policy, since the Sentry policy liability limit, $100,000, was not less than that of Aetna underinsured motorist coverage limit of $100,000.[1] Therefore, argues Aetna, under the clear and unambiguous language of its policy, the Herzigs are not entitled to recover underinsured motorist benefits as a result of the accident of October 12, 1983. Furthermore, Aetna asserts that the arbitration clause does not govern the instant dispute since the characterization of the Lamar vehicle as an underinsured motor vehicle remains in dispute, and the arbitration clause is conditioned upon the presence of an underinsured motor vehicle.

■ Sitting in diversity, this court must apply the substantive law of the forum state Pennsylvania. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Wilson v. Asten–Hill Manufacturing Co.,* 791 F.2d 30 (3d Cir. 1986). The Pennsylvania Supreme Court has held that although the parties to an arbitration agreement must submit a dispute within the scope of that agreement to an arbitration panel, "the issue of whether [a] dispute is one that is covered by the terms of the arbitration agreement is for the court to determine." *Safeco Insurance Company of America v. Wetherill,* 622 F.2d 685, 691 (3d Cir.1980) (quoting *Women's Society for the Prevention of Cruelty to Animals of Pennsylvania v. American Arbitration Association,* 440 Pa. 34, 36, 269 A.2d 888, 890 (1970)). In the instant case, whether or not the Lamar vehicle qualifies as an underinsured motor vehicle under the contract of insurance between the parties is a matter for the court to decide.

Plaintiffs admit Aetna's contention that the maximum liability coverage provided by the Sentry policy is $100,000. In addition, they admit the entry in the uninsured motorists declaration section of the Aetna

---

**1.** The Aetna policy declarations list $100,000 as the maximum liability for uninsured motorists. Although there is no reference to underinsured motorists coverage in the main body of the policy declarations, a two page addendum entitled "Underinsured Motorists Coverage" provides that the maximum liability coverage under this policy for underinsured motorists is identical to that for uninsured motorists.

policy of $100,000 as the limit of liability for bodily injuries caused by uninsured motorists. However, the Herzigs contend that since the policy was to provide coverage for two vehicles that the real limit is $200,000 (i.e., $100,000 for each car). Hence, assert plaintiffs, the Lamar vehicle is underinsured since the Sentry policy limit of $100,000 is less than $200,000.

The Herzigs maintain that since the underinsured motorists coverage provided by Aetna fixes the maximum liability of said coverage by reference to the maximum liability stated in the declaration section for uninsured motorist benefits that this court should resolve the stacking issue in accordance with state court precedent authorizing the stacking of uninsured motorists benefits. Plaintiffs cite *State Farm Mutual Auto Insurance Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978), *Sones v. Aetna Casualty and Surety Co.*, 270 Pa. Super. 330, 411 A.2d 552 (1979), and *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968), for the proposition that such stacking is mandated by state law and that insurers' efforts to limit recovery by anti-stacking clauses in the policy are contrary to public policy.

 As asserted by the Herzigs, Pennsylvania case law does offer support for the stacking of uninsured motorists benefits. While some cases base the availability of stacking on the existence of some ambiguity in the policy coverage terms and the absence of an express disclaimer, *see Blocker v. Aetna Casualty and Surety Co.*, 232 Pa.Super. 111, 332 A.2d 476 (1975); *Guerriero v. Potomac Ins. Co. (No. 2)*, 69 Pa.D. & C.2d 646 (1975); *Flynn v. Allstate Insurance*, 50 Pa.D. & C.2d 195 (1970), at

least one decision has approved stacking despite the presence of an anti-stacking clause on the ground that such clauses were contrary to public policy. *See Sones*, 270 Pa.Super. at 334–35, 411 A.2d at 554.

The court recognizes that the policy declaration submitted by the parties discloses the payment of two premiums by the Herzigs, one for each car insured under the policy. In addition, the declarations page states that the payment of premiums for uninsured motorists benefits are included in the normal premium payments. Although Pennsylvania courts have emphasized the payment of multiple premiums to justify the cumulation of uninsured motorist benefits, *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 338, 473 A.2d 1005, 1010 (1984), this court must nevertheless reject plaintiffs' position that they are entitled to stack underinsured motorists benefits under the policy by multiplying the maximum liability stated by the number of vehicles covered. Uninsured motorists benefits are not underinsured motorists benefits, and plaintiffs may not by reference obtain what they have no contract or statutory rights to. Indeed, the state court decisions relied upon by plaintiffs all attempt to construe the terms of the policy at issue in conformity with the legislative intent underlying the Uninsured Motorist Act, 40 Pa.Stat.Ann. § 2000. Said act has no application to the provision of underinsured motorists benefits. *Votedian v. General Accident Fire & Life Assurance Corp.*, 330 Pa.Super. 13, 478 A.2d 1324, 1327 (1984).[2]

The clear terms of the contract of insurance governing the relationship between the parties require the rejection of plaintiffs "stacking" argument. The underin-

---

2. The court notes that Subchapter C of the Pennslyvania Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat.Ann. § 1731 *et seq.*, effective October 1, 1984, places an affirmative duty on insurers to provide certain levels of coverage for underinsured motorists in the automobile liability insurance policies which they issue. This law defines an underinsured motor vehicle as: "A motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.Cons.Stat.Ann. § 1702. Under

this definition, the Lamar vehicle would qualify as an underinsured motor vehicle. However, this law does not apply in the instant case since both the issuance of the policy by Aetna to the Herzigs and the accident in question occurred prior to the effective date of the statute. Hence, as the *Votedian* case dictates, the scope of underinsurance benefits provided by automobile liability policies issued prior to October 1, 1984 must be determined from an examination of the terms of the policy alone.

sured motorist coverage section of the policy provides:

> The limit of liability shown in the Declarations under Uninsured Motorists is our maximum limit of liability under this coverage for all damages resulting from one accident. *This is the most we will pay regardless of the number of* covered persons, claims made, *vehicles* or premiums shown in the Declaration, or vehicles involved in the accident. (Emphasis added.)

Such policy provisions which unequivocally preclude the stacking of underinsured motorists benefits are valid and enforceable under Pennsylvania law. *Vogel v. National Grange Mutual Ins. Co.*, 332 Pa.Super. 384, 481 A.2d 668 (1984); *Haegele v. Pennsylvania General Insurance Co.*, 330 Pa. Super. 481, 479 A.2d 1005 (1984); *Votedian, supra.* While intermediate appellate court decisions are only " 'indicia of how the state's highest court might decide' the issue ..., such decisions may constitute 'presumptive evidence' of state law." *McGowan v. University of Scranton,* 759 F.2d 287, 291 (3d Cir.1985) (citations omitted).

As the non-moving party, the Herzigs, in response to Aetna's motion for summary judgment bear the burden of coming forward with affidavits or other materials which "set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). In the event that the non-moving party "fails to make a showing sufficient to establish an element essential to that party's case," the Federal Rules mandate the entry of summary judgment against that party. *Celotex,* 477 U.S. at 332, 106 S.Ct. at 2557.

Plaintiffs have failed to negate Aetna's claimed basis for summary judgment. The Herzigs readily acknowledge that the liability limit of the policy was $100,000, as alleged by Aetna. Moreover, Pennsylvania case law offers no support for plaintiffs' sole defense that the Aetna policy limit for underinsured motorist benefits should be "stacked" to reflect the number of vehicles.

A comparison between the Aetna underinsured motorists coverage limit of $100,000 and the Sentry policy's limit of $100,000 clearly supports Aetna's claim that the Lamar vehicle is not in fact an underinsured motor vehicle. Since no issues of material fact remain in dispute, Pennsylvania law requires the entry of summary judgment in Aetna's favor.