## Walaconis v. Erie Insurance Group

*Wayne G. Johnson* and *Zanita A. Zacks-Gabriel,* for plaintiffs.

*T. Warren Jones* and *Marcia H. Haller*, for defendants.

LEVIN, *J.*, June 12, 1989 — The court in the present case is called upon to rule on cross-motions for summary judgment filed by plaintiffs Joseph and Lorita Walaconis and defendants Erie Insurance Group and Erie Insurance Exchange. These cross-motions were originally filed in April and May 1988. On September 9, 1988, this court denied the cross-motions upon a finding that material issues of fact remained outstanding, precluding a summary judgment determination at that time. The parties subsequently filed a "stipulation of fact," clarifying all factual disputes relevant to the disposition of the instant case, which is now ripe for a summary judgment ruling.

The facts of the instant case, as set forth below, are not in dispute. Prior to December 8, 1984, plaintiffs owned one vehicle, a 1983 Cadillac. The Cadillac was insured by policy no. E07-27-02068 issued by defendants. This policy was renewed for a one-year period, effective July 27, 1984 through July 27, 1985. The terms of this policy provided bodily injury liability coverage in the amount of $50,000 per person and $100,000 per accident. It also provided uninsured/underinsured motorist coverage in the amount of $15,000 per person and $30,000 per occurrence.

On October 1, 1984, the Pennsylvania Motor Vehicle Financial Responsibility Act, 75 Pa.C.S. §1701 et seq., went into effect. Plaintiffs purchased a second vehicle (a 1978 Ford) on December 8, 1984. It was purchased as an additional vehicle, not as a replacement vehicle. After they acquired the Ford, plaintiffs notified defendant during the policy period of their intention to extend insurance cover-

age to the additional vehicle. Plaintiffs did not ask for changes in the pre-existing policy, nor did they request that a separate policy be issued for the second vehicle. Defendants issued coverage for the Ford by adding it to the pre-existing policy no. E07-27-02068 and forwarding to plaintiffs a "revised declarations endorsement." The revised endorsement showed that bodily injury liability coverage was still $50,000 per person/$100,000 per occurrence and uninsured/underinsured coverage remained at $15,000 per person/$30,000 per occurrence. Plaintiffs timely received the above-described "revised declarations endorsement" to policy no. E07-27-02068; no direct insurance agent contact occurred. No notices regarding the MVFRA were given to plaintiffs. Further, plaintiffs made no request for any changes as to liability coverage.

On February 19, 1985, plaintiff Joseph Walaconis was severely injured as a pedestrian when he was struck by a vehicle operated by Kenneth C. Borland. Plaintiffs settled their personal-injury claim against third-party tort-feasor Borland for the sum of $100,000. This amount represented the limit of Borland's personal-injury liability insurance coverage. Thereafter, plaintiffs made a claim for underinsured motorist coverage under their policy with defendants. Defendants denied the claim, giving rise to the case at bar.

The primary issue the court must resolve is whether plaintiffs' alleged entitlement to underinsured motorist benefits is governed by the unambiguous terms of the policy between plaintiffs and defendants or whether the MVFRA effective date altered the policy in some way. Contingent on the above, the second issue is whether the plaintiffs are entitled to recover any uninsured/underinsured motorist benefits from defendants.

The standard of review for this court on a motion for summary judgment is well settled. Summary judgment is properly granted in those cases where the evidence of record, taken as a whole, does not present a genuine issue as to any material fact. Pa.R.C.P. 1035(b). It is not part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. *Thorsen v. Iron and Glass Bank,* 328 Pa. Super. 135, 475 A.2d 928 (1984).

On October 1, 1984, the Pennsylvania Motor Vehicle Financial Responsibility Act (MVFRA), 75 Pa.C.S. §1701 et seq., went into effect and the No-fault Act was repealed. The MVFRA provided for a phase-in period in sections 9 and 11 of the supplementary provisions. These sections mandate that the MVFRA "applies to insurance policies *issued or renewed* on or after the effective date of this act [October 1, 1984]." (emphasis supplied) Policies issued or renewed prior to the effective date were to be written and construed in accord with the law in effect at that time. The most significant aspect of the MVFRA to this case is the requirement that underinsured/uninsured motor vehicle coverage amounts equal the liability limits covering the insured on his own policy. 75 Pa.C.S. §§1731, 1732. Section 1791 of the MVFRA mandates notice of these requirements at the time of application for original coverage or renewal.

Resolution of the instant case turns on whether a non-replacement vehicle purchased after October 1, 1984, and added to a pre-existing policy, must be insured under the terms of the MVFRA.

In this case, the sequence of events leading up to plaintiff's injury are key. Plaintiffs renewed their original policy of insurance on the Cadillac by date of July 27, 1984 for a one-year term. The MVFRA

went into effect on October 1, 1984. Plaintiffs acquired an additional vehicle (the Ford) which was added to the original policy on December 8, 1984. Plaintiff Joseph Walaconis was injured by a third-party vehicle on *February 19, 1985*. Plaintiffs argue that the policy coverage on the second vehicle (the Ford) was "issued" as an original policy after the effective date of the MVFRA. As such, plaintiffs contend that defendants were required to notify plaintiffs of the new law, pursuant to section 1791 of the act, at which time plaintiffs would have adjusted their uninsured/underinsured motor vehicle coverage up to the $100,000 liability amount. To the contrary, defendants argue that they did not issue a new or "original" policy on the Ford. Rather, the second vehicle was simply added to the existing policy. The solution to this issue can be found in the actual terms of the policy of insurance between plaintiffs and defendants, as set forth in relevant part below:

### *"Cars We Insure"*

"(1) *Owned cars we insure for the coverages you have purchased:*

"We insure any car or trailer described on the declarations and any private passenger car or trailer you replace it with. *We will insure any additional private passenger car or trailer you acquire if:*

"(a) we insure all private passenger cars and trailers you own on the date of this acquisition, and

"(b) you notify us *during the policy period* of your intention to have *this policy apply* to the additional private passenger car or trailer.

"If a replacement or addition is made with 30 days *prior to the end of the policy period,* you have 60 days after acquisition to notify us." (emphasis supplied)

The court must carefully scrutinize the above-cited policy term. The only logical reading of the unambiguous language cited above reveals that the same policy is being extended to additional vehicles. (See specifically the italicized terms above.) If the contract contemplated a new policy, it would have so stated. This proviso can be likened to a "rider" policy. Insurance companies often agree with their insureds to add any articles to the existing policy without the necessity of issuing a new or "original" policy. The instant contract provides for additional vehicles being added to the existing policy. In other words, the policy provides for contingencies that may occur in the future with appropriate conditions such as increased premiums. It does not contemplate that a new policy will be issued. The extension of insurance coverage to the second vehicle (the Ford) in this case was merely a standard revision to a previously existing policy. This did not constitute issuance of a new policy.

Consequently, the notice requirement of the MVFRA was not triggered until July 25, 1985, the date of the existing policy renewal anniversary, more than five months after the plaintiff's accident occurred. By the same token, the MVFRA in no way applied to plaintiffs' accident or to their policy of insurance, which had been renewed prior to the date the MVFRA went into effect and which remained in full force, as written, for another year after the renewal date, i.e., until July 25, 1985.

As an aside, it should be noted that plaintiffs' argument, sounding in basic contract principles, is misplaced. The intent of the parties to the original insurance contract controlled any subsequent dealings between them. Plaintiffs paid for the original

policy coverage and the Ford premium, thereby accepting its terms. When the second vehicle (the Ford) was purchased, plaintiffs fulfilled all conditions necessary to add the Ford to the pre-existing policy as required by its unambiguous terms. They made no requests for changes and did not have personal contact with any insurance agent. It only stands to reason that issuance of a new or second "original" policy would have required some sort of agent contact, as well as other technical procedures involved in any new or "original" contract negotiation between parties. Put simply, plaintiffs are bound by the original policy and the "revised declarations" terms because of the fact that they paid for the continuous coverage.

As to the second issue; under the terms of the instant policy of insurance, plaintiffs are not entitled to underinsured motorist benefits. Plaintiffs' insurance policy unambiguously defines "uninsured motor vehicle" to include the following:

"(4) *An underinsured motor vehicle.* An underinsured motor vehicle is one that has *lower limits* (from all liability policies — including other than motor vehicle insurance, bonds, securities or self-insurance plans applicable at the time of the accident) *than the limits applicable to one car* under this uninsured motorist coverage." (emphasis supplied)

There is no doubt that the Borland vehicle in this case cannot be categorized as an "underinsured vehicle." This is true because his liability coverage was $100,000, an amount far exceeding the limits applicable to one car under plaintiffs' uninsured-motorist coverage provision (i.e. $15,000). As such, plaintiffs are not entitled to uninsured/ underinsured motorist coverage under their policy with defendants.

In the alternative, defendants argue that they are entitled to set-off all amounts recovered from Borland against plaintiffs' uninsured motorist coverage limits pursuant to the following policy provision:

"Uninsured motorist payments will be reduced by:

"(1) the amounts paid by or for those liable for bodily injury or property damage to anyone we protect . . . "

The Pennsylvania appellate courts have upheld such insurance policy provisions. See *Sparler v. Fireman's Fund Insurance Co.*, 360 Pa. Super. 597, 521 A.2d 433 (1987); *Votedian v. General Accident Fire & Life Assurance Corp.*, 330 Pa. Super. 13, 478 A.2d 1324 (1984). This court has also recently ruled that in certain situations, unambiguous set-off clauses are valid under the No-fault Act, the Uninsured Motorists Act and the new MVFRA. See *Lytle v. Allstate Insurance Co. et al.*, 72 Erie Leg. J. 46 (1989). An application of the language in the instant policy of insurance results in the following calculation: defendant Erie Insurance policy affording $15,000/$30,000 uninsured/underinsured motorist coverage must be offset in the amount of $100,000, since plaintiffs received liability payments in that amount under the policy of Kenneth Borland, the third-party tort-feasor in this case. Therefore, no amounts are owing from defendants to plaintiffs in this case. The court concludes that defendants properly denied underinsured motor vehicle coverage based on the terms of the policy of insurance between the parties at bar.

## ORDER

And now, June 12, 1989, it is hereby ordered, adjudged and decreed that defendants' Erie Insurance Group and Erie Insurance Exchange motion for summary judgment is granted as against plaintiffs Joseph and Lorita Walaconis. By this order the court also denies plaintiffs' cross-motion for summary judgment based on the reasons set forth in the accompanying opinion.