581 A.2d 585

**Donald KOVALESKI and Geraldine Kovaleski, Appellants,**

**v.**

**The ERIE INSURANCE GROUP, Appellee.**

Superior Court of Pennsylvania.

Argued April 25, 1990.

Filed Oct. 5, 1990.

520

Joseph E. Janc, Bear Creek, for appellants.

Edward Neyhart, Scranton, for appellee.

Before MONTEMURO, BECK and FORD ELLIOTT, JJ.

MONTEMURO, Judge:

Appellants, Donald and Geraldine Kovaleski (Kovaleskis), bring this appeal from a final judgment entered against them in their action for declaratory judgment against appellee, Erie Insurance Group (Erie Insurance), in which the Kovaleskis seek underinsured motorists benefits. The case was submitted for a non-jury trial upon a stipulation of facts. The trial court rendered a verdict in favor of Erie Insurance, and denied the Kovaleskis' post-trial motions For the following reasons, we reverse the order of the trial court and remand this case for further proceedings.

On or about August 17, 1984, Geraldine Kovaleski was involved in an automobile accident in which she suffered personal injuries. Mrs. Kovaleski brought a claim for damages against the third-party tortfeasor, and subsequently settled the claim for $25,000.00, the liability limits of the tortfeasor's insurance policy. This settlement figure was insufficient to compensate Mrs. Kovaleski for her injuries; thus, she and her husband initiated a claim against their own insurer, Erie Insurance, for underinsurance benefits, as Mrs. Kovaleski was insured by Erie Insurance at the time of the accident. Erie Insurance denied the claim on the basis that the Kovaleskis did not qualify for underinsurance benefits under the terms and conditions of their policy.

The Kovaleskis brought this declaratory judgment, seeking to resolve the dispute over their entitlement to underinsurance benefits from Erie Insurance. The trial court found that the Kovaleskis' policy did provide for underinsured motorists benefits, but under the provisions of the policy and the circumstances of this case, the Kovaleskis

were not entitled to any further recovery under the underinsured motorists provisions of their policy.

The resolution of this case depends upon the interpretation of the insurance policy. In interpreting insurance contracts, our courts have relied upon the traditional principles of contract interpretation which hold that the court must ascertain the intent of the parties from the wording of the written agreement, and in the absence of ambiguous language, enforce the plain meaning of the contract. *Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Insurance Co.*, 512 Pa. 420, 517 A.2d 910 (1986). "In construing the policy, we are mindful that '[p]olicy clauses providing coverage are interpreted in a manner which affords the greatest possible protection to the insured....' The insured's reasonable expectations are the focal point in reading the contract language." *Geisler v. Motorists Mutual Ins. Co.*, 382 Pa.Super. 622, 626, 556 A.2d 391, 393 (1989) (citation omitted). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (citation omitted).

Here, the trial court found that the relevant documents consist of the policy declarations sheet, the substantive provisions of the policy and an endorsement to the policy.

The definitional section of the policy states:

(5) **"Declarations"** means the sheet which shows the coverages **you** have chosen for each **car we insure.** It also shows the premium for those coverages and the limits of protection. Your policy is not complete without this sheet.

R.R. at A–26. Item 5 of the declarations sheet includes a column entitled "Uninsured/Underinsured Motorists" which sets the limits for bodily injury for each insured vehicle at $15,000 for each person and $30,000 for each accident, thus indicating that the Kovaleskis purchased coverage for underinsured motorists. *See* R.R. at A–23, A–24.

While the Kovaleskis agree that their policy included coverage for underinsured motorists, the Kovaleskis contend that the trial court erred in finding that the conditions of the coverage should be determined by reference to endorsement A–MMM–BC3 which is listed as an endorsement to the policy on the declarations sheet. The Kovaleskis claim that the endorsement was not part of the policy on the date of the accident. The policy period runs from June 25, 1984 to June 25, 1985. On July 6, 1984, the Kovaleskis changed their policy by cancelling coverage for one of the three vehicles originally insured. A supplemental declarations sheet which was issued pursuant to the change reflected the removal of the third vehicle from the policy and showed the corresponding premium reduction.

The Kovaleskis claim that because Item 6 of the original declarations sheet references the endorsement and Item 6 of the supplemental declarations sheet does not reference the endorsement, the endorsement may not be considered part of the policy. A close examination of the revised sheet, however, shows that the revised sheet should be read in conjunction with the original. In the upper right hand section of the revision are two boxes that do not appear on the original declarations sheet. One of the boxes notes the effective date of the change and the other box references by code letters those items that have been changed. According to the "Change Code" box, the only items that were changed were Items 3 and 4, corresponding to the change code letters C and D. Item 3 lists the lienholder for the insured vehicles and Item 4 is a description of the cars insured under the policy. Importantly, the change code box does not indicate that Item 6 concerning endorsements, which would correspond to code letter I, has been changed. Also, unlike the original declarations sheet, the revision does not set forth the breakdown of the premiums for each vehicle insured according to the type of coverage, but instead merely contains a "Premium Change" box showing the amount of the premium reduction and the remaining premium balance. There is no evidence to suggest that the

endorsement was eliminated from the policy, or that this revised sheet was intended to supplant the original declarations sheet, rather than supplement the original.

We note that the endorsement was submitted as part of the policy in the Stipulation of Facts, *see* Stipulation of Facts at 5, 12–13; the trial court did not err, therefore, in considering the endorsement as part of the record in this case. We find that the endorsement was part of the policy in effect at the time of the accident, as the original declarations sheet covering the period of June 25, 1984 to June 25, 1985 references the endorsement, and the revised declaration sheet merely reflects the Kovaleskis' requested change that the Chevy pickup be removed from the policy. The trial court properly considered the endorsement as part of the policy.

Endorsement A–MMM–BC3 provides:

The following is added to the definition of an uninsured motor vehicle:

(4) an underinsured motor vehicle. An underinsured **motor vehicle** is one that has lower limits (from all liability policies—including other than **motor vehicle** insurance, bonds, securities or self-insurance plans applicable at the time of the accident) than the limits applicable to one **car** under this Uninsured Motorists Coverage.

R.R. at A–35.

The policy includes a section entitled "Uninsured Motorists Coverage" which provides that the insurer will pay bodily injury damages that the insured is entitled to recover from the owner or driver of an uninsured motor vehicle. R.R. at A–30. The policy also contains a "no stacking" provision which reads:

Our duty to pay for damages to **anyone we protect** is limited by the amounts shown on the **Declarations** for insurance to one **car**. The insuring of more than one person or car under this coverage does not increase the limits of protection. No one will ever be entitled to more than the highest limit for "each person" applicable to any

one **motor vehicle** under this or any other policy **we** issue which applies to the injury.

The amount shown for "each person" is the limit of protection for all damages because of injury to one person as the result of one accident. The amount shown for "each accident" is the total limit of protection for all injuries to two or more persons....

R.R. at A–31.

Because the endorsement expands the definition of uninsured motor vehicle to include underinsured motor vehicles as defined above, the trial court properly determined, from a reading of the entire policy, that the Kovaleskis' insurance policy included coverage for accidents involving underinsured motorists.

The terms of the coverage for underinsured motorists are defined by the endorsement provision and the basic folio provisions on uninsured motorists coverage. Specifically, the policy provisions allow for payment of bodily injury damages arising out of the ownership or use of a motor vehicle which has lower insurance policy limits than the limits for coverage for uninsured motorists applicable to one car as set forth in the declarations sheet. Here, the policy limit of the third party tortfeasor was $25,000, the amount paid in settlement of Mrs. Kovaleski's claim. The portion of the settlement figure attributable to bodily injury damages was $23,463.00. According to the declarations sheet, the Kovaleskis' policy provides coverage for uninsured motorists for each car in the amount of $15,000.00 per person up to a maximum of $30,000.00 per accident. Because the policy limit of the third party tortfeasor ($25,-000.00) was greater than the limits of the Kovaleskis' uninsured motorists coverage ($15,000.00 per person) for one car, the trial court determined that the Kovaleskis were not entitled to any further recovery under the underinsured motorists provisions of their policy with Erie Insurance.

The Kovaleskis argue that because the provisions of the insurance policy are ambiguous, they should be permit-

ted to stack the limits of liability available for the two vehicles covered by the policy so that the total amount of insurance coverage applicable to Mrs. Kovaleski's accident would be $30,000.00 per person with a maximum of $60,-000.00 per accident. Hence, the $25,000.00 limit of the third party tortfeasor's policy would be lower than the limits of the uninsured motorists coverage of the Kovaleskis' policy, and the underinsured motorists provision would come into play. The Kovaleskis alternatively argue that notwithstanding the language of the endorsement and the no stacking provision of the policy, they should be permitted to stack coverages because of caselaw which invalidates no stacking clauses in insurance policies as contrary to public policy.

Under decisional law in Pennsylvania, the enforceability of no stacking provisions varies, depending upon whether the claim is based upon uninsured motorists coverage or underinsured motorists coverage, and whether the case is governed by the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. §§ 1701, *et seq.* (the MVFRL).

 Clauses prohibiting accumulation of uninsured motorists coverages have been held to be void as violative of the purposes and policies underlying the Uninsured Motorist Act, which requires all insurance policies to include uninsured motorists coverage. 40 Pa.S. § 2000(a). *Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984). Policy provisions which prohibit stacking of underinsurance coverage within a single policy are not violative of public policy, provided the case is not governed by a statute which requires that motor vehicle liability policies contain underinsured motorists coverage. *Votedian v. General Accident Fire & Life Assurance Corp.,* 330 Pa.Super. 13, 18, 478 A.2d 1324, 1327 (1984). Thus, where the case is governed by the now defunct No–Fault Motor Vehicle Insurance Act [1] (No–Fault Act), a policy limitation

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.*, repealed by the Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

which prevents stacking of the underinsured motorists benefits violates no public policy. *Votedian, supra,* 330 Pa.Superior Ct. at 19–20, 478 A.2d at 1327. In *Votedian,* we held that where the legislature has not established a policy which mandates that insurers provide underinsured motorists coverage, the terms and limitations of the underinsurance coverage "are not controlled by statute or by public policy but by the agreement reached by the parties." *Id.,* 330 Pa.Superior Ct. at 18–19, 478 A.2d at 1327.

■ Where a case arises under the provisions of the MVFRL, a provision which prohibits stacking of the underinsurance coverages of two vehicles insured under the policy is void as violative of public policy as expressed in the MVFRL, because the MVFRL requires that motor vehicle liability insurance policies contain both uninsured and underinsured motorists coverage. 75 Pa.C.S.A. § 1731(a). *Tallman v. Aetna Casualty and Surety Co.,* 372 Pa.Super. 593, 539 A.2d 1354, *allocatur denied* 520 Pa. 607, 553 A.2d 969 (1988).

Because this case is governed by the No–Fault Act, rather than the MVFRL, the disposition of this case depends upon whether the policy coverage at issue may be properly classified as uninsured motorists coverage or underinsured motorists coverage. In this respect, we find the case of *Geisler v. Motorists Mutual Insurance Co., supra,* to be controlling. In *Geisler,* we held that where the policy at issue is drafted in an ambiguous manner such that it reasonably appears that an underinsured motorist is to be "treated" as an uninsured motorist, the no stacking clause in the policy is unenforceable. *Id.,* 382 Pa.Superior Ct. at 628–31, 556 A.2d at 394–96.

In *Geisler,* the father and son appellees had suffered injuries in excess of the $35,000 maximum limit of liability coverage under the tortfeasor's policy, and after receiving that amount from the tortfeasor, sought to recover uninsured motorists benefits from their own insurer. *Id.,* 382 Pa.Superior Ct. at 624–25, 556 A.2d at 393. The limit of liability for uninsured motorists benefits under the appel-

lees' policy was $50,000 per person with a maximum of $100,000 per accident; the policy covered two automobiles. In resolving the question of whether the policy's no stacking clause was enforceable, the Court first determined whether uninsured or underinsured benefits were at issue. The sole reference to underinsured motorists coverage in the *Geisler* policy was contained in an amendment to the policy, similar to the endorsement in the Kovaleskis' policy, which expanded the term uninsured motor vehicle to include underinsured motor vehicles:

### POLICY PROVISION AMENDMENTS
\* \* \* \* \* \*

### PART C–UNINSURED MOTORISTS COVERAGE

1. When the term uninsured motor vehicle is used in Part C, it shall also include underinsured motor vehicle as defined below.

> "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

*Geisler, supra,* 382 Pa.Superior Ct. at 629, 556 A.2d at 395. The Court found that because the insurance company had chosen to have the specific coverage for underinsured motorists "subsumed" within the general coverage for uninsured motorists, rather than separated from the uninsured coverage, the Geislers were seeking uninsured motorists benefits and therefore they were allowed to stack coverages. *Id.,* 382 Pa.Superior Ct. at 630, 556 A.2d at 395. In reaching this holding, the Court relied on the fact that the only reference to underinsured motorists coverage was in the amendment. *Id.* The declaration sheet did not list any underinsurance coverage, no separate premium was charged for the underinsured motorists benefits, the "quick reference" guide made reference to uninsured motorists coverage and the no-stacking clause referred only to general uninsured coverage. *Id.*

Although there are some differences between the policy at issue here and the policy in *Geisler*, the strong similarities between the structure and wording of the two policies leads us to conclude that under the Kovaleski policy, underinsured motorists are to be treated as uninsured motorists, and thus the Kovaleskis are entitled to stack the coverages.

With the exception of a reference to underinsured motorists coverage in the declarations sheet, the only part of the Kovaleski policy relating to underinsurance coverage is contained in the Policy Change Endorsement. As in *Geisler*, the policy and endorsement are drafted in such a manner that coverage is provided for uninsured motorists, with the definition of uninsured motor vehicle being expanded to include underinsured motor vehicle. Under the endorsement provision, underinsured motor vehicles are to be included within the category of uninsured vehicles. Similar to the policy in *Geisler*, the no stacking provision at issue here is included within the section of the policy dealing with uninsured motorists coverage, and the provision makes no reference to underinsured motorists coverage.

No separate premium was charged for the Kovaleskis' underinsured motorists coverage. Although the declarations sheet contains a column entitled "Uninsured/Underinsured Motorists," the premium charge which corresponds to this coverage is not divided according to uninsured and underinsured benefits. We also note that the nine dollar ($9.00) premium for the uninsured/underinsured motorists coverage is the same amount as the premium charged for uninsured motorists coverage before the underinsured motorists coverage was added to the policy. *See* R.R. at A–20, A–22, A–23. Although the "quick reference" guide makes various references to uninsured motorists coverage, the guide contains no reference to coverage for underinsured motorists.

In holding that the insureds in *Geisler* were entitled to stack coverages, Judge Hoffman reasoned as follows:

As we have noted above, the insured's reasonable expectations are the focal point in interpreting contract

language.... Here, in light of the contractual structure outlined above, an insured could reasonably have understood the amendment to mean merely that appellant had *expanded* the uninsured motorists coverage to include underinsured motorists. Thus, even though their insurer was not required to provide underinsurance coverage, and even though their insurer could limit underinsurance coverage with a no stacking provision, appellees could reasonably have concluded that, under the peculiar language in *their* policy, if they were injured by an underinsured driver they were entitled to all of the benefits allowed by statute and decisional law to those seeking uninsured benefits, including stacking. We recognize, of course, that the amendment lends itself to a contrary, and equally reasonable interpretation: i.e., because the terms "uninsured" and "underinsured" are separately defined, and obviously refer to different factual situations, the underinsured provision must be treated as a separate and distinct coverage. Because the meaning of the amendment is at best ambiguous, ..., we must construe the provision in favor of the insured and against the insurer.

*Geisler, supra,* 382 Pa.Superior Ct. at 631, 556 A.2d at 396 (citations omitted) (footnote omitted).

In accordance with the holding and reasoning set forth in *Geisler,* we conclude that under the language of the policy at issue in this case, the Kovaleskis could reasonably have concluded that the endorsement merely expanded the uninsured motorists benefits to include underinsurance benefits, and that in the event that they sought underinsurance coverage, they would be entitled to all of the benefits afforded to uninsured motorists under Pennsylvania case-law, including stacking. Because we conclude that stacking is appropriate in this case, the applicable policy limit for uninsured motorists coverage under the Kovaleski policy is $30,000.00. The tortfeasor's motor vehicle had a liability limit of $25,000.00, which is lower than the limits applicable to one car under the uninsured motorists coverage. Thus, according to the endorsement definition of "underinsured

motor vehicle," the Kovaleskis are entitled to additional coverage under the uninsured motorists provisions of the policy.[2]

The Kovaleskis also argue that the "set-off" provision of the policy which requires that uninsured motorists payments be reduced by the amount paid by a third party tortfeasor is invalid because the clause prevents the Kovaleskis from recovering any underinsurance payments. The set-off clause reads:

Uninsured Motorists payments will be reduced by:

(1) the amounts paid by or for those liable for bodily injury to **anyone we protect.**

R.R. at A–31.

In several cases, we have upheld the validity and enforceability of clauses which require a set-off of underinsurance payments for sums previously paid by persons liable for bodily injury damages. *See Geisler, supra; Bateman v. Motorists Mutual Ins. Co.,* 377 Pa.Super. 400, 547 A.2d 428 (1988); *Sparler v. Fireman's Ins. Co. of Newark, N.J.,* 360 Pa.Super. 597, 521 A.2d 433 (1987) (en banc); *Votedian, supra.* In keeping with this line of cases, we interpret the set-off provision contained in the Kovaleskis' policy to require that the $30,000.00 limit on underinsurance benefits be reduced by $23,463.00, the amount received by Mrs.

**2.** We note that under Erie Insurance's interpretation of the Kovaleskis' policy, the Kovaleskis would rarely, if ever, be entitled to receive underinsurance coverage. The No–Fault Act required all owners of motor vehicles registered or operated in Pennsylvania to obtain liability insurance for the payment of sums up to a total of $30,000 per accident, subject to a sublimit of $15,000 for bodily injury damages arising out of injury to one person. 40 P.S. § 1009.104(a). Without stacking, the tortfeasor's motor vehicle would never fit within the definition of "underinsured" set forth in the endorsement. Under the No–Fault Act, the tortfeasor's lower limits could not be lower than $15,000 per person, $30,000 per accident. The endorsement defines an underinsured motor vehicle as one with lower limits than the limits applicable to one car under the uninsured motorists coverage. Without stacking, the Kovaleskis' uninsured motorists limits are $15,000 per person up to a maximum of $30,000 per accident. Thus, provided the tortfeasor complied with the No–Fault Act, the tortfeasor's limits would never be lower than the Kovaleskis' limits for uninsured motorists coverage and the underinsurance provision would never apply.

Kovaleski from the tortfeasor in compensation for her bodily injuries. Mrs. Kovaleski is therefore entitled to recover up to $6,537.00 in underinsurance benefits from Erie Insurance. The Stipulation of Facts does not indicate the extent of the injuries suffered by Mrs. Kovaleski. If Mrs. Kovaleski's injuries amount to greater than $30,000, then she is entitled to recover the full $6,537.00. If Mrs. Kovaleski's damages are less than $30,000.00, then she may recover an amount equal to her actual damages minus the $23,463.00 set off. See *Geisler, supra,* 382 Pa.Super. at 633, 556 A.2d at 397.

For the foregoing reasons, we reverse the judgment and remand this case for further proceedings consistent with this decision.

Reversed and remanded. Jurisdiction is relinquished.