583 A.2d 819

Gail DAVIS

v.

ERIE INSURANCE GROUP, Appellant.

Gail DAVIS, Appellant,

v.

ERIE INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Oct. 24, 1990.

Filed Dec. 19, 1990.

Edward S. Neyhart, Scranton, for appellant (at 425) and appellee (at 502).

Thomas M. Holmes, Scranton, for appellant (at 502) and appellee (at 425).

Before CAVANAUGH, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

These are cross-appeals from a judgment vacating an arbitrator's award and granting underinsurance coverage in the amount of $15,000.

On March 24, 1985, Davis was injured when her automobile was struck by an automobile driven by Rennie Hendrickson. Hendrickson is an Allstate insured, and Allstate has paid the $50,000 limits of its policy. Davis was insured under Erie's "Pioneer Family Auto Policy," which specifically provided for uninsured motorist coverage in the amount of $50,000, an amount equal to the limits of liability coverage under the policy. The policy, which did not provide for underinsurance coverage,[1] was issued August 22, 1984 and continued in effect until August 22, 1985.[2]

During this policy period and prior to the accident *sub judice,* the Pennsylvania Motor Vehicle Financial Responsi-

---

1. Underinsured coverage was included only as an extension of uninsured coverage to the extent that the sum of all applicable policies was less than the respective bodily injury or property damage limits under the Uninsured Motorists Coverage. As such, there was no underinsured coverage beyond the limits of Uninsured Motorists Coverage. Pioneer family auto insurance policy, p. 7, Uninsured Motorists Coverage (4).

2. Pursuant to the law in effect at the time, Pennsylvania No–Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 et seq., insurance carriers were not required to issue policies containing underinsurance coverage.

bility Law (MVFRL), 75 Pa.C.S.A. § 1701 *et seq.*, took effect on October 1, 1984. This Law, at section 1731 Scope and amount of coverage, requires: "No motor vehicle liability insurance policy shall be ... issued ... unless ... underinsured motorist coverages are provided ... in amounts equal to the bodily injury liability coverage...." The Law applies to insurance policies issued or renewed on or after October 1, 1984, the effective date of this Act. *Gov't. Employees Ins. Co. v. Benton*, 859 F.2d 1147, reh. den. (3d 1988).

The policy currently under consideration was issued prior to the effective date of the Law. Therefore, the MVFRL does not, at first blush, apply. However, Davis' policy included the following liberalization clause:

(2) HOW YOUR POLICY MAY BE CHANGED

This policy conforms to the laws of the state in which **you** live at the time it is issued. We will give **you** the benefit of any broadening of this policy, if it does not require additional premium. The policy may be changed by endorsement issued by us.

(Pioneer family auto insurance policy, p. 11.) As a consequence, the trial court held that the effect of the liberalization clause was to extend to Davis underinsurance coverage in the amount of $15,000. The trial court's rationale is as follows. Pursuant to the statutory mandate, all policies issued after October 1, 1984 must contain, at a minimum, $15,000/30,000 [3] underinsurance coverage. Because $15,-000/30,000 underinsurance coverage is the minimum statutorily required amount, the trial court made a finding of fact that Davis would not have been required to pay additional premiums for this benefit. The "broadening" lan-

3. **"Financial responsibility."** The ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident. The financial responsibility shall be in a form acceptable to the Department of Transportation.
75 Pa.C.S. § 1702.

guage of the policy's liberalization clause, the court reasoned, extended to Davis the minimum statutory underinsurance coverage. In the same respect, the underinsurance coverage was limited to $15,000/30,000 by the liberalization clause. Any higher amount of underinsurance coverage would have "required additional premiums." While we cannot determine on what basis the trial court found as a fact that additional premiums would not have been required to extend policy coverage to the minimum requirements for underinsured motorists coverage, since Erie has not contested this finding and has not discussed it in its brief, we must assume the trial court's finding is correct. Also, despite the objection by Davis to the trial court's finding that underinsured coverage under the new statutory provision extended to the full policy limits of $50,000 would have resulted in increased premiums, it appears to be logically and reasonably proper and we accept the trial court's finding on this issue.

The clear and unambiguous language of the liberalization provision expanded Davis' then existing policy to include the broadening of coverage effectuated by the MVFRL. Where a provision of an insurance contract is clear and unambiguous, the court is required to give effect to that language. *Standard Venetian Blind Co. v. Amer. Empire Insurance*, 503 Pa. 300, 469 A.2d 563 (1983). Here, the language in the liberalization provision is clear and unambiguous. The clause requires an expansion of coverage to conform with the laws of the insured's home state. During this policy's term, the MVFRL took effect requiring insurance carriers to provide mandatory underinsured motorist coverage. Thus, the liberalization clause automatically afforded underinsurance coverage.

We are cognizant of the conflict between the factual situation at hand and the application of the statutory language. Pursuant to section 1731, underinsured motorist coverage is to be provided at an amount equal to the bodily injury liability coverage. Appellant's bodily injury liability coverage is $50,000. Davis argues that she, therefore, is

entitled to $50,000 underinsurance coverage, an amount equal to her bodily injury coverage, pursuant to section 1731. As discussed above, the trial court found as fact that underinsurance coverage to $50,000 would have increased appellant's premiums whereas the statutory minimum of $15,000 coverage for one person in one accident would not increase premiums. We will not disturb this factual finding.

We reject Davis' assertion in her appeal at 502 Philadelphia, 1990, that the writing requirement of 75 Pa.C.S. § 1734 Request for lower or higher limits of coverage, read in conjunction with section 1731, mandates Erie to provide $50,000 underinsured liability coverage. Section 1734 provides:

A named insured may request in writing the issuance of coverages under section 1731 (relating to scope and amount of coverage) in amounts less than the limits of liability for bodily injury but in no event less than the amounts required by this chapter for bodily injury. If the named insured has selected uninsured and underinsured motorist coverage in connection with a policy previously issued to him by the same insurer under section 1731, the coverages offered need not be provided in excess of the limits of liability previously issued for uninsured and underinsured motorist coverage unless the named insured requests in writing higher limits of liability for those coverages.

After a studied examination of the statute, we decline to contort its clear meaning in order to apply it in a manner which will inure to Davis' benefit.

This Court has stated:

When underinsured motorists coverage is included, the terms and limitations thereof are not controlled by statute or public policy but by the agreement reached by the parties. That agreement, as expressed in the policy of insurance, may place limitations upon underinsured motorist coverage, subject only to the requirement that the limitation be clearly worded or conspicuously displayed.

*Votedian v. General ACC Fire & Life Assur. Corp.*, 330
Pa.Super. 13, 19, 478 A.2d 1324, 1327 (1984).[4]

The liberalization clause operated to reform Davis' insurance policy to include the newly mandated underinsured motorist coverage. In so holding we have resolved the issues presented by Erie in its appeal at 425 Philadelphia, 1990. In that appeal, Erie maintains that the above analysis cannot be sustained as the liberalization clause applies only to policies issued after the effective date of the MVFRL, and to apply requirements of the new Act to the old No Fault Motor Vehicle Act, was to reform the contract. Secondly, even if the liberalization clause applied, the underinsurance in this case was "gap" insurance and, therefore, would result in zero benefits.

In support of its first position, Erie relies on *Employees Benefit Plan v. Harleyville Mutual Insurance Co. v. Grode*, 112 Pa.Cmwlth. 470, 535 A.2d 739 (1989). It is inapplicable because the Court in *Harleyville* found that the effective date of the MVFRL did not apply to insurance policies issued before October 1, 1984 in interpreting the application of the Catastrophic Loss Trust Fund (Cat Fund). The Cat Fund stood separate from the policy of insurance and required payment of a $5 premium upon registration of the vehicle. It required issuance or renewal of the policy and a registration after October 1, 1984, to be applicable. Eligibility did not occur in that case and the facts, law and circumstances are not applicable here.[5]

Erie relies on *Ostroff v. Keystone*, 357 Pa.Super. 109, 515 A.2d 584 (1986), as holding a liberalization clause may not be used to imply underinsured coverage where only uninsured motorist coverage is specified in the contract. That

---

**4.** In *Votedian,* the policy was not controlled by 75 Pa.C.S. § 1731 because the agreement was entered into prior to the statute's effective date. However, the *Votedian* policy did not have a liberalization clause, as here, which included, albeit limited, the underinsurance coverage provided pursuant to section 1731.

**5.** Erie also relies on *Walconis v. Erie Insurance Company,* 400 Pa.Super. 632, 576 A.2d 1144 (1990). Although our decision in that case supports Erie's position, an unpublished memorandum is not proper for precedential purposes.

case may be distinguished from this case on its facts and the wording of the contract. There, the liberalization clause applied only to such changes in the *forms published and used by the company,* which would result in extended or broadened coverage, without additional premium charge. The underinsured coverage as interpreted in the "Private Car Manual" used by Keystone agents provided coverage without additional charge, limited to the basic limits of $15,000, (as required here), against any operator of a vehicle from a state not requiring $15,000 worth of coverage. In other words, Keystone agreed to permit underinsurance to apply, up to $15,000, only in the instance where an out-of-state driver's coverage was not up to the $15,000 minimum coverage required in Pennsylvania. Pennsylvania drivers could not qualify as underinsured drivers under that policy because they were required to have a minimum of $15,000 basic insurance. Payment of the $15,000 minimum on a claim satisfied any possible claim that might have arisen under underinsurance basic coverage. We see no relationship to this case.

The liberalization clause in the present policy, as stated supra, provides:

> (2) **HOW YOUR POLICY MAY BE CHANGED**
>
> This policy conforms to the laws of the state in which **you** live at the time it is issued. We will give **you** the benefit of any broadening of this policy, if it does not require additional premium. The policy may be changed by endorsement issued by us.

(Policy at p. 11.) Erie maintains a *new* law cannot effect the policy as it was not within the contemplation of the policy. We do not agree.

■ A new law requiring additional premiums and a new and different type of coverage not contemplated by the policy, would fall within this category. However, *underinsurance* was contemplated by the policy at least as part of an uninsured claim under Uninsured Coverage to the extent that the sum of the limits of all applicable policies is less than the coverage under the Uninsured Coverage. The

change in that coverage was to extend it beyond Uninsured Coverage and make it mandatory as a separate coverage which would provide for payment to the minimum statutory amount, $15,000/30,000, of damages which exceeded the limits of those policies which were liable. As such, the law broadened the coverage contained in the policy and, therefore, came within the liberalization clause. The liberalization clause recognized that its minimum coverage "conforms to the law of the state in which you live at the time it is issued." It was the intent of the parties that the policy would at all times conform to the *law of the state,* as soon as it was legally practical to do this, which generally occurred at the renewal date after the effective date of the policy, or, if no additional premium was required, upon the effective date of the new law. We, therefore, conclude that in reading the underinsured coverage provision contained in the Uninsured Coverage portion of the policy, which provides for "gap" coverage, the addition to that coverage by the 1984 statutory amendment could only mean that underinsurance coverage means *in addition to* the limits of liability by policies covering the accident to the extent of the damages, but not in excess of the $15,000/30,000 limit. Erie's position on "gap" coverage is, therefore, not sustainable. We, therefore, affirm the Order of the trial court.

Order affirmed.