**NORTH RIVER INSURANCE COMPANY, Appellant,**

v.

**E. James TABOR, Administrator for the Estate of Todd Tabor.**

**No. 90–5709.**

United States Court of Appeals, Third Circuit.

Argued Jan. 11, 1991.

Decided May 29, 1991.

---

C. Roy Weidner, Jr. (argued), David J. Lanza, Johnson, Duffie, Stewart & Weidner, Lemoyne, Pa., for appellee.

Henry H. Janssen, Tanya M. Sweet, Michael G. Sabo, Rapp, White, Janssen & German, Ltd., Philadelphia, Pa., for amicus curiae Sea Ins. Co., Ltd.

Christine M. Brenner (argued), Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for appellant.

Before STAPLETON, GREENBERG, and SEITZ, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

In our opinion in *West American Ins. Co. v. Park*, 933 F.2d 1236 (3d Cir. 1991), we have concluded that West American was estopped from challenging the legality of its own policy under Section 1736 of the Pennsylvania Motor Vehicle Responsibility Law ("MVFRL"), because the policy permitted the insured to stack *uninsured* motorist coverage to exceed her liability coverage. In this diversity of citizenship declaratory judgment action under Pennsylvania Law between appellant-plaintiff, North River Insurance Company, and ap-

pellee-defendant, the estate of Todd Tabor, dealing with *underinsured* motorist coverage rather than *uninsured* motorist coverage, essentially the same stacking issue is presented. Inasmuch as we find no meaningful difference between the two coverages with respect to stacking, and there being no factual differences to distinguish the cases so that the basis for estoppel present in *Park* is present here, we find our discussion in *Park* fully determinative of the stacking issue presented herein and thus we will affirm the judgment of the district court allowing stacking without further discussion.[1]

In this case, however, an additional issue is raised, and we are called upon to predict whether the Supreme Court of Pennsylvania would rule invalid, as contrary to the public policy embodied in the MVFRL, an insurance contract clause providing for the set-off or reduction of underinsured motorist coverage benefits "by all sums paid ... by or on behalf of persons or organizations who may be legally responsible." This issue cannot be decided on the estoppel rationale adopted in *Park,* as here North River obviously does not seek to contradict its policy. On cross-motions for summary judgment, the district court determined that Supreme Court of Pennsylvania would so rule and entered judgment for Tabor's estate. *North River Ins. Co. v. Tabor,* 744 F.Supp. 625 (M.D.Pa.1990). The courts that have considered the issue are split. *Compare, e.g., Lytle v. Allstate Ins. Co.,* 72 Erie L.J. 46 (Ct.C.P. Erie County 1989) (set-off provision enforceable); *Nationwide Mut. Ins. Co. v. Hampton,* 1990 WESTLAW 87276 (U.S.D.C., E.D.Pa. June 18, 1990) (set-off provision enforceable to extent statutorily-mandated floor for underinsured motorist coverage not affected), *with, e.g., North River Ins. Co. v. Tabor,* 744 F.Supp. 625 (set-off provision unenforceable); *Conrad v. Progressive Cas. Ins. Co.,* 48 Pa. D. & C.3d 71 (Blair County 1987) (same).

---

1. Section 1736 deals with both uninsured and underinsured coverage.

## I.

### *Factual Background and Contentions of the Parties*

The district court's concise recitation of the undisputed facts in this case is as follows:

Defendant James E. Tabor is the administrator for the estate of Todd J. Tabor who was killed in an automobile accident. Aetna Life & Casualty Company insured the host vehicle in which the decedent, who was a passenger, was killed. That company paid to the estate $250,000 in liability coverage. The Tabors have a personal automobile policy [with North River Insurance Company] which provides coverage for three vehicles owned by them and $100,000 of underinsured motorist coverage for [each vehicle] per accident with bodily injury....

744 F.Supp. at 626.

"The policy in question contains an express offset provision entitling [North River] to reduce the underinsured motorist benefits owing under its own policy by the liability coverage amounts already paid by other companies, in this case Aetna." *Id.* at 627.

As Tabor's estate is under *Park* entitled to stack the underinsured motorist coverage on the three Tabor vehicles to achieve a total of $300,000 coverage from North River, and as Tabor's estate has already received $250,000 from Aetna, the question of set-off arises. Tabor's estate claims that the set-off clause is unenforceable as contrary to public policy and accordingly the additional $300,000 in stacked coverage is available to satisfy its remaining damages which it asserts are at least $300,000. North River, however, argues that, pursuant to its contract with the Tabors, the $250,000 received from Aetna must be set-off against the $300,000 in stacked underinsured motorist coverage, so that its liability to Tabor's estate for underinsured benefits cannot exceed $50,000.[2] Under the view

---

2. North River, of course, urges that stacking is not permitted but we reject that contention. It argues, however, that if stacking is allowed its

held by Tabor's estate, the combination of the tortfeasor's liability coverage with Aetna and the Tabors' underinsurance coverage will satisfy $550,000 of the damages it claims; North River's view, since we are allowing stacking, potentially leaves $250,000 of these damages unsatisfied. For the reasons that follow, we find the North River position untenable under the MVFRL.

■ As noted by Judge Smith in *Conrad v. Progressive Cas. Ins. Co.*, 48 Pa. D. & C.3d 71, there are two types of underinsured motorist coverage. Under the first the coverage places the insured party in the same position that he would have been in had the tortfeasor carried liability insurance in the amount of the insured's underinsured motorist policy limit. *See Higgins v. Fireman's Fund Ins. Co.*, 160 Ariz. 20, 22, 770 P.2d 324, 326 (1989). Under this "gap" theory of underinsured motorist coverage—so-called because the coverage merely fills the "gap" between the tortfeasor's liability coverage and the injured party's underinsured motorist coverage, *Conrad*, 48 Pa. D. & C.3d at 74—, a driver is considered "underinsured" when his liability coverage does not at least equal *the uninsured/underinsured coverage carried* by the injured insured. *See, e.g., Raggio v. Volkswagen Ins. Co.*, 327 So.2d 505, 511 (La.Ct.App.1976).

■ Under the second view, underinsured motorist coverage supplies a fund for full compensation to the injured insured and thus the insured is entitled to compensation from his insurer regardless of any recovery obtained from other sources. The insured may therefore recover underinsured motorist benefits until his policy limits are reached or he is fully compensated for his damages, whichever comes first. *See Hamilton v. Farmers Ins. Co. of Washington*, 107 Wash.2d 721, 727, 733 P.2d 213, 216 (1987). Under this "excess" theory of underinsured motorist coverage —*i.e.*, the injured insured's coverage being reckoned as "excess" over and above the liability policy of the tortfeasor, *Conrad*,

48 Pa. D. & C.3d at 74—, a tortfeasor is "underinsured" when his liability coverage does not at least equal *the damages suffered* by the injured insured.

■ Under 75 Pa. Cons. Stat. Ann. § 1731(a) (Purdon Supp. March 1990), every insurance policy issued in Pennsylvania must include "underinsured motorist coverage" unless it is rejected by the insured. Section 1731(c) defines "underinsured motorist coverage" so as to make clear that an insurer must provide coverage for all "persons who suffer injury ... and are legally entitled to recover damages therefore from owners or operators of underinsured motor vehicles." Since section 1702 of the MVFRL defines any "underinsured motor vehicle" as any "motor vehicle for which the limits of available liability insurance ... are insufficient to pay losses and damages," it follows that insurers must provide protection for all persons injured by a motor vehicle having less liability insurance than the loss and damages sustained. This would include, for example, a person who has purchased for herself $100,000 per person in underinsured motorist coverage and who suffers a $300,000 loss at the hands of a driver who has purchased $100,000 liability coverage. If an insurer were entitled to include a set-off provision such as that in the North River policy, a person so injured would have no underinsured motorist protection, a result clearly inconsistent with the statutory text. For this reason, we read the statute as reflecting a legislative choice in favor of "excess" underinsured motorist protection.

As the court in *Conrad* noted: "The legislative mandate to insurance carriers issuing motor vehicle insurance policies in Pennsylvania was to provide coverage to insureds for those cases when third party liability limits were inadequate or not enough to satisfy an injured parties' [sic] losses," and "[a] determination of inadequacy can only be made by reference to the injured party's losses and damages." 48 Pa. D. & C.3d at 79–80. A set-off provision

---

maximum exposure would be $50,000, *i.e.,* three times $100,000 or $300,000 less $250,000 paid by Aetna.

preventing Pennsylvania's statutory scheme from having its desired effect—*i.e.*, to require insurers to provide underinsured motorist coverage *in excess to* the tortfeasor's liability coverage—is therefore contrary to public policy and unenforceable.

Moreover, under the MVFRL as applicable to this case, as opposed to prior Pennsylvania law, insurers are *required* to offer underinsured coverage of at least $15,000 per person, $30,000 per accident. *See* 75 Pa. Cons. Stat. Ann. §§ 1702, 1715(c), 1731(a) (Purdon Supp.1990). This alone distinguishes the pre-MVFRL cases upholding set-off provisions with regard to underinsurance coverage, as in those cases the issue was one merely of construing a contract. *See, e.g. Kovaleski v. Erie Ins. Group*, 398 Pa.Super. 519, 530–31, 581 A.2d 585, 591 (1990); *Sparler v. Fireman's Ins. Co. of Newark*, 360 Pa.Super. 597, 521 A.2d 433 (1987); *Votedian v. General Accident Fire & Life Assur. Corp.*, 330 Pa.Super. 13, 478 A.2d 1324 (1984). Thus, as noted by *Votedian*, underinsured motorist coverage not then being required, "[w]hen [it] is included [in an insurance contract], the terms and limitations thereof *are not controlled by statute or by public policy* but by agreement reached by the parties. That agreement, as expressed in the policy of insurance, *may place limitations* upon underinsured motorist coverage, *subject only to* the requirement that the limitation be clearly worded and conspicuously displayed." 330 Pa.Super. at 19, 478 A.2d at 1327 (emphasis added). Accordingly, under at least some of those pre-MVFRL cases,

the insurance policy at issue contractually adopted the "gap" version of underinsured motorist coverage when defining the benefits to which the insured was entitled. *See Kovaleski*, 398 Pa.Super. at 524, 581 A.2d at 588 (contract stated: "An underinsured motor vehicle is one that has lower limits (from all liability policies ...) than the limits applicable to one car under this Uninsured Motorists Coverage"); *Sparler*, 360 Pa.Super. at 606–07, 521 A.2d at 437–38 (policy defined "underinsured vehicle" as one with minimum liability coverage required by law but where such is less than the limit of underinsurance coverage carried by insured); *Bateman v. Motorists Mut. Ins. Co.*, 377 Pa.Super. 400, 406, 547 A.2d 428, 431 ("the perimeters [of coverage] were set out clearly [in the contract of insurance] so that the total damages claimed incurred by an insured would not be the measuring rod against which exposure to liability by the insurer would be gauged"), *rev'd*, —— Pa. ——, 590 A.2d 281 (1991).[3]

The North River policy in this case also purports to define "underinsured motor vehicle" using the "gap" theory.[4] But now, of course, the situation has changed. Under the MVFRL, insurers *must* offer underinsured motorist coverage, and that coverage *is* controlled by statute *and* by a public policy meant to foster the fullest possible, or "excess," coverage. The pre-MVFRL cases, then, are inapposite, and insurers may not by contract convert Pennsylvania's broad statutory scheme for underinsured motorist coverage into a nar-

---

**3.** In approving set-off provisions (and anti-stacking provisions with regard to underinsurance coverage), these pre-MVFRL cases made note of the fact that Pennsylvania law did not require insurers to offer underinsured motorist coverage. *See Kovaleski*, 398 Pa.Super. at 526–27, 581 A.2d at 589; *Votedian*, 330 Pa.Super. at 18–19, 478 A.2d at 1327; *Sparler*, 360 Pa.Super. at 614, 521 A.2d at 441 (Del Sole, J., concurring and dissenting) (quoting *Votedian*). Thus, while it is true that the Legislature is presumed to have enacted the MVFRL against the background of the former law, *see* 1 Pa. Cons. Stat. Ann. § 1921(c)(5) (Purdon supp.1990), it can reasonably be inferred that the Legislature thought that once it adopted the "excess" version of underinsurance and mandated it be of-

fered by insurers, set-off provisions would no longer be upheld by the courts. The Legislature's alleged "silence" in the face of the pre-MVFRL cases approving set-offs, then, is not indicative of an intent to allow set-offs to continue once underinsured motorist coverage was required. *But see Lytle*, 72 Erie L.J. at 48–9.

**4.** The policy provides:

'Underinsured Motor Vehicle' means a land motor vehicle or trailer of any type to which a 'bodily injury' liability bond or policy applies at the time of the accident but its limit for 'bodily injury liability' is less than the limit of liability for this [policy's underinsurance] coverage.

row one merely providing "gap" coverage. North River's attempt to do this through its off-set provision and its definition of "underinsured motorist vehicle" is therefore unavailing. Indeed, the Superior Court in *Davis v. Erie Ins. Group*, 400 Pa.Super. 345, 583 A.2d 819 (1990), expressly rejected a contention that a policy liberalization clause which resulted in the addition to a policy of underinsured coverage after the adoption of the MVFRL provided for "gap" coverage. Thus, it affirmed a judgment of a common pleas court granting $15,000 in underinsured coverage even though the insured recovered $50,000 from the other driver.[5]

We also observe that our determination is bolstered by reference to the policies and the rationales behind stacking. Throughout the several programs adopted by Pennsylvania for automobile insurance its courts have consistently seen a legislative intent to provide for the fullest coverage possible for injured insureds, not in excess of their damages,—and this intent has extended into the current MVFRL era, *see Tallman v. Aetna Ca. & Sur. Co.*, 372 Pa.Super. 593, 598–99, 539 A.2d 1354, 1357, *allocatur denied*, 520 Pa. 607, 553 A.2d 969 (1988). Accordingly, in repeatedly striking down anti-stacking provisions, one reason cited by the Pennsylvania cases has been the insurer's improper attempt to cut back the coverage of insureds in violation of the statutes' intent. *See, e.g., Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984); *State Farm Mut. Auto Ins. Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978); *Harleysville Mut. Cas. Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112

(1968). Here, of course, the set-off provision attempts to limit the coverage of the insured but it was the Pennsylvania Legislature's intent in promulgating the MVFRL to provide insureds with the fullest coverage possible.

The other main reason cited by the Pennsylvania courts in striking down anti-stacking provisions is protection of the reasonable expectations of the insured. This reflects the concept that the insured, having paid multiple premiums, is entitled reasonably to believe that he has multiple coverage—*e.g.*, having paid for a total of $300,000 worth of uninsured/underinsured motorist coverage ($100,000 on each of three vehicles), the insured is entitled to $300,000 worth of coverage. *See, e.g., Williams*, 481 Pa. at 143, 392 A.2d at 287. The facts of this case expose, in the set-off provision, the type of unfairness that has been condemned in anti-stacking provisions. Due to the set-off, the Tabors, while having purchased $300,000 worth of underinsured motorist coverage, are now told that Tabor's estate is entitled to only $50,000 in coverage. This state of affairs, we believe, would be repugnant to the Legislature of Pennsylvania and to its Supreme Court as well. In sum we believe that the Pennsylvania Supreme Court would not countenance policy provisions that would, in any situation, allow underinsured coverage to be obviated because of a partial recovery received from the negligent underinsured.[6]

■ Finally, even if the result we reach here were not mandated by statute, the recent Pennsylvania Supreme Court case of *Bateman v. Motorists Mut. Ins. Co.*, ——

---

5. It must be said, however, that even aside from the circumstance that *Davis* is not a Supreme Court decision, it is not completely controlling as the $15,000 in underinsured coverage was the statutory minimum. Indeed, North River, citing *Woglemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145, *allocatur denied*, 520 Pa. 590, 551 A.2d 216 (1988), concedes that there is a minimum of $15,000 underinsured coverage in this case. *See also Schemberg v. Progressive Casualty Ins. Co.*, 709 F.Supp. 620 (E.D.Pa.1989); (provision providing for offset against $15,000 in underinsured coverage invalid).

6. We therefore reject the approach taken by *Nationwide Mut. Ins. Co. v. Hampton*, 1990 WESTLAW 87276 (U.S.D.C., E.D.Pa. June 18, 1990), which approved a set-off provision to the extent that it did not reduce underinsured motorist coverage below the statutory floor. This approach has not been taken by the Pennsylvania courts in the stacking cases where the court has struck down anti-stacking provisions which, in the particular cases being considered, did not affect the minimum coverage required by law. Neither is this approach consistent with the primary basis for our determination here, *i.e.*, Pennsylvania's legislative program of "excess" underinsured motorist coverage.

Pa. ——, 590 A.2d 281 (1991), *rev'g* 377 Pa.Super. 400, 547 A.2d 428 (1988), would direct us to the same conclusion as a matter of contractual interpretation. In *Bateman,* a pre-MVFRL case, the set-off provision contained in the uninsured/underinsured motorist portion of the insurance policy read:

> Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:
>
> 1. Paid because of the bodily injury by or on behalf of persons or organizations who may be responsible.

377 Pa.Super. at 403, 547 A.2d at 430.[7] Pursuant to the policy, the insured in *Bateman* had $50,000 worth of underinsured motorist coverage. After Bateman's fatal accident, his estate collected a total of $78,334 in settlement from three sources: the manufacturer of the vehicle, the owners of a tavern, and the driver of the other vehicle involved in the accident. Total damages, it was agreed, were in excess of $128,334. However, when the estate sought the additional $50,000 in underinsured motorist benefits, Motorists Mutual claimed its underinsurance liability was obviated by the set-off clause as the settlement figure exceeded underinsurance coverage. The majority of a panel of arbitrators agreed with Motorists Mutual. The arbitrators' decision was affirmed by the Court of Common Pleas which, in turn, was affirmed by the Superior Court.

The Supreme Court, however, reversed the determination of the Superior Court. The court held that the set-off clause was ambiguous and, construing it against the insurer, found that Bateman's estate was entitled to the $50,000 worth of underinsured motorist coverage provided by the policy:

> Appellee, the drafter of this policy, argues that the phrase 'Any amounts otherwise payable for damages under this coverage ...' refers to the limits of liability of its policy so that any sums that Appellant recovers from other persons reduces the amount available to Appellant under the under-insurance provision. Since Appellant recovered at least $50,000.00 from other parties, the limits of underinsurance coverage must be reduced to zero and her claim for under-insurance rejected.
>
> Appellee, however, neglects to take into account the word 'otherwise' which has been inserted into the policy and its effect upon the meaning of this phrase. The word 'otherwise' is defined as 'in a different way or manner' and when inserted into this phrase reads, 'Any amounts payable in a different way or manner for damages under this coverage ...'. The problem generated by this word when placed in this phrase is that under this policy the only damages payable are for under-insurance payments and there are no other payments payable in a different way or manner which are to be reduced by sums paid by others. Thus, the inclusion into this phrase of the word 'otherwise' makes Appellee's interpretation that the clause refers to its under-insurance limits of liability an impossible one and renders the language ambiguous.
>
> Appellant, on the other hand, argues that the damages otherwise payable referred to are her decedent's total damages sustained (stipulated to be in excess of $128,334) minus the $78,334 recovered from other parties which must be deducted from her damages leaving $50,000 as damages which Appellee as under-insurer must pay.
>
> Since the provision of the policy is ambiguous it must be construed as Appellant suggests.

—— Pa. at ——, 590 A.2d at 293.

Thus, following *Bateman,* when we interpret the phrase "amounts *otherwise*

---

7. The virtually identical set-off clause in the uninsured/underinsured portion of the policy in this case reads:

> B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible.

payable for damages payable under this coverage" to mean Tabor's estate's *total* damages claimed to exceed $550,000, and reducing that amount by $250,000—*i.e.*, by the "sums ... [p]aid ... on behalf of persons ... who may be legally responsible"—, we find North River is liable to Tabor's estate for up to $300,000 underinsured motorist coverage, not to exceed actual damages.

### Conclusion

Per *West American Ins. Co. v. Park,* 933 F.2d 1236, (3d Cir.1991), the estate of Todd Tabor is entitled to stack underinsured motorist coverage in excess of liability coverage. Moreover, we determine that the Supreme Court of Pennsylvania would hold that set-off provisions of the type at issue herein are void and unenforceable as contrary to the public policy expressed in the MVFRL. Even if the Supreme Court would not so hold, however, per *Bateman v. Motorists Mut. Ins. Co.,* —— Pa. ——, 590 A.2d 281 (1991), we find that the provision at issue herein is ambiguous and is ineffective to work a set-off from underinsurance coverage of settlement monies received. Accordingly, we will affirm the judgment of the district court.