## Allwein v. Donegal Mutual Insurance Company

*Robert Sullivan Jr.,* for plaintiff.
*Harry W. Reed,* for defendant.

WALTER, *P.J.,* July 25, 1994— Before us is the petition to modify or correct arbitration award filed by Donegal Mutual Insurance Company, defendant/petitioner. It was listed for argument and, after the submission of briefs, orally argued. The petition is now ripe for disposition.

On August 13, 1992, Michael A. Allwein was riding his bicycle to work when he was struck by a vehicle operated by Jeremiah Lauver. Michael Allwein died as a result of injuries suffered during the accident.

The vehicle operated by Jeremiah Lauver and owned by Henry Lauver was insured by the self-insured Eastern Pennsylvania Mennonite Church. The vehicle carried $15,000/$30,000 in automobile liability insurance coverage.

At the time of the accident, Michael Allwein resided with his parents, James H. Allwein and Christine M. Allwein. The Allweins owned three vehicles insured with automobile insurance issued by Donegal Mutual Insurance Company. This policy provided underinsurance coverage of $35,000 per vehicle and allowed stacking of the coverages for a total underinsured motorist liability coverage of $105,000.

Both Donegal and Robert J. Allwein, administrator c.t.a. of the estate of Michael A. Allwein, deceased, admit the value of the loss experienced by Allwein because of the death of Michael Allwein exceeds the $15,000 liability limits of the party at fault, the operator Jeremiah Lauver and the owner Henry Lauver, and the $105,000 underinsurance liability of Donegal.

Allwein filed a claim against Donegal seeking payment of underinsurance benefits in the amount of $105,000. Donegal has admitted its obligation to pay underinsurance benefits but has taken the position that it owes only $90,000 in underinsurance benefits because it may offset the amount it owes by the $15,000 of liability insurance benefits from the Lauvers' policy. Donegal bases its position on the following limiting language found in its policy:

"C. The limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid for an 'insured's' attorney either directly or as part of the amount paid to the 'insured.' It also includes all sums paid for the same damages under part A of this policy."

See exhibit A of exhibit 1 of the petition, Form PPD 04 19 3/92, page 2 of 3. Pursuant to a stipulation between the parties, Donegal has paid Allwein $90,000 in underinsurance benefits.

The sole legal issue to be determined by this court is whether the cited language in Donegal's policy is valid or whether Donegal owes Allwein an additional $15,000 in underinsurance benefits. The issue was submitted to arbitration in accordance with the Pennsylvania Arbitration Act of 1927. The three member panel held two to one in favor of Allwein, stating Allwein was entitled to the full $105,000 of underinsurance coverage from Donegal, and Donegal was not allowed to reduce its underinsurance coverage by the $15,000 paid to Allwein under the Lauvers' liability policy. Donegal filed the present petition to modify or correct that decision.

Both parties agree the "error of law" standard of review provided by 42 Pa.C.S. §7302(d)(2) applies to

a petition to modify or correct an arbitration award where the underinsurance arbitration was conducted pursuant to an insurance policy providing for arbitration in accordance with the Pennsylvania Arbitration Act of 1927.[1] Therefore, we shall use that standard of review.

Donegal argues the limiting language in its policy, cited earlier herein, is fully enforceable. Allwein argues this type of gap underinsurance is void as a violation of public policy.

Both parties agree with the underlying concepts of gap and excess coverage. Under gap coverage, the party at fault is underinsured when liability limits are less than a specified policy limit of the insured victim. To determine the amount of the insured's underinsurance recovery, the recovery from the tortfeasor's policy is deducted from the amount recoverable under the insured's policy. The insured's recovery fills the gap between the two policies up to the total amount of damages suffered or policy limits, whichever is less.

Under excess coverage, the party at fault is underinsured when his liability limits are less than the insured victim's total damages. The tortfeasor's policy acts as primary coverage, and the insured victim's policy acts as secondary coverage. The victim recovers under the tortfeasor's policy up to the policy limits and then recovers under his own policy up to coverage limits or up to the total amount of damages, whichever is less.

---

1. 42 Pa.C.S. §7302(d)(2) (Purdon 1982) provides: "Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict."

Pennsylvania's Motor Vehicle Financial Responsibility Law provides that an underinsured motor vehicle is "a motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S. §1702 (Purdon 1994).

In analyzing the meaning of this wording, court of common pleas, in *Conrad v. Progressive Casualty Insurance Co.,* 48 D.&C.3d 71 (C.P. Blair Cty. 1987), stated, "The legislative mandate to insurance carriers issuing motor vehicle insurance policies in Pennsylvania was to provide coverage to insureds for those cases when third party liability limits were inadequate or not enough to satisfy an injured parties' [sic] losses. A determination of inadequacy can only be made by reference to the injured party's losses and damages." *Id.* at 79-80.

In *Conrad,* the defendant argued that an insured's underinsurance coverage should be reduced or offset by the third party's liability coverage. The court stated that were it to follow the defendant's argument to its logical extension:

"anytime an insured receives third party benefits which are equivalent to or which exceed the limits of the underinsured motorist benefits in his own policy, he will be unable to recover those benefits, even if his injuries and damages exceed the third party's limits of liability. We believe that such an interpretation and application of the Motor Vehicle Financial Responsibility Law would render the underinsured motorist coverage illusory, since its very existence would be dependent upon the entirely fortuitous circumstance of what a third party tortfeasor's liability limits happen to be." *Id.* at 80.

In the present case, Allwein argues the setoff provision in Donegal's policy prevents Pennsylvania's statutory scheme from having its desired effect of requiring insurers to provide underinsured motorist coverage in excess of the tortfeasor's liability coverage, and is, therefore, contrary to public policy and unenforceable. In support of its position, Allwein cites a third circuit court of appeals case, *North River Insurance Company v. Tabor,* 934 F.2d 461 (3rd Cir. 1991). There the court announced that the legal issue such as ours in the present case had not yet been addressed by the appellate courts of this Commonwealth.

In *North River,* the third circuit court of appeals examined a policy provision requiring the underinsurance coverage to be reduced or set-off by the amount paid to the insured through the liability coverage of the tortfeasor and found this gap theory of underinsurance coverage contrary to public policy. *Id.* at 466. The court held the setoff provision in the policy unenforceable stating:

"The facts of this case expose, in the setoff provision, the type of unfairness that has been condemned in antistacking provisions. Due to the setoff, the Tabors, while having purchased $300,000 worth of underinsured motorist coverage, are now told that Tabor's estate is entitled to only $50,000 in coverage. This state of affairs, we believe, would be repugnant to the Legislature of Pennsylvania and to its Supreme Court as well. In sum we believe that the Pennsylvania Supreme Court would not countenance policy provisions that would, in any situation, allow underinsured coverage to be obviated because of partial recovery received from the negligent underinsured. *Id.* We agree with the court of appeal.

In the present case, the Allweins have purchased $105,000 worth of underinsured motorist coverage.

Donegal now claims that it need only pay out $90,000 in benefits. We find this completely contrary to public policy.

In its defense, Donegal asserts the Pennsylvania Superior Court has reviewed the present issue and overruled the federal court decision in *North River.* We have examined the companion cases of *Jeffrey v. Erie Insurance Exchange,* 423 Pa. Super. 483, 621 A.2d 635 (1993) and *State Farm Mutual Automobile Insurance Co. v. Broughton,* 423 Pa. Super. 519, 621 A.2d 654 (1993) cited by Donegal and find Donegal's construction of those holdings wide of the mark.

In those cases, while the Superior Court did hold the offset provision to be enforceable, the issue involved is distinguishable from the issue involved in the present case.

In *Jeffrey,* the injured victim was a guest passenger who did not own a vehicle and, therefore, did not own any automobile insurance policies. The driver of the vehicle in which the victim was a passenger and the driver of the other vehicle involved in the accident were found to be at fault. The driver of the vehicle in which the victim was a passenger was insured. The other driver was not insured. The victim recovered the policy limit of $100,000 under the liability provision of the host driver's policy. The victim then sought to recover uninsured motorist benefits *under the same policy,* claiming that because the other vehicle was uninsured, he had a right to make a claim against the same policy for both liability coverage and uninsured motorist coverage. The victim was *not* an insured party under the policy against which he was making this claim. The *Jeffrey* court framed the issue it was deciding as follows:

"[W]hether it is against the public policy of this Commonwealth for an insurer to reduce, dollar for dollar, the uninsured motorist coverage payments made to a guest passenger with liability coverage payments made under same policy to same guest passenger if both the host driver and another uninsured driver are jointly liable for the injuries suffered by the passenger." *Id.* at 486, 621 A.2d at 637.

In rejecting the passenger's claim that the offset provision violated public policy, the Superior Court stated:

"[W]e are reluctant to find that a guest passenger, a class two insured, must have the ability to recover both uninsured benefits and liability benefits from the same policy without further guidance from our legislature or the insurance commissioner [footnotes omitted.] The appellant's claim is predicated solely upon her occupancy of the insured's vehicle. The appellant did not have a contractual relation with the insurance company. She has neither paid premiums nor was a specifically designated beneficiary of the policy. We do not believe that a guest passenger can reasonably expect to receive the liability limits of the coverage and, additionally, uninsurance motorist benefits from the same policy." *Id.* at 505-506, 621 A.2d at 647.

In the present case we agree with Allwein that there is a vast difference in the issues decided in the *Jeffrey* and *Broughton* cases and the issue before this court. In the present case, we are dealing with two insurance policies insuring two different parties—the party at fault and the injured party, not just one insurance policy insuring the party at fault as in the *Jeffrey* and *Broughton* cases. The first policy is the Lauvers' policy which provides liability coverage. Since the Lauvers are liable to Michael Allwein for the injuries they inflicted, their policy must provide liability benefits to Michael. How-

ever, the Lauvers were underinsured as Michael's injuries far exceeded the amount of liability coverage they had obtained. This is where the Allweins' policy kicks in. The Allweins had purchased underinsurance coverage in the amount of $105,000, and Michael was an insured party under that policy.

We agree with the Superior Court that an offset of uninsured motorist benefits against liability benefits paid under the same policy is entirely reasonable and within the expectation of the parties. However, we believe, and so hold, an offset of underinsured motorist benefits against liability payments received by a named insured from a *different* insurance policy is not contemplated by the MVFRL and is against public policy. The Allweins paid for underinsurance benefits in the amount of $105,000. As long as the injuries suffered meet or exceed the tortfeasor's policy limits plus that amount, they should receive benefits in the amount of $105,000.

### ORDER

And now, July 25, 1994, for the reasons set forth in the accompanying opinion, the petition to modify or correct arbitration award filed by Donegal Mutual Insurance Company, petitioner, is hereby denied.

The award of the arbitrator finding Donegal Mutual Insurance Company liable to Robert J. Allwein, administrator c.t.a. of the estate of Michael A. Allwein, deceased in the amount of $105,000 less a credit of $90,000, for a net liability of $15,000 is affirmed.

Consequently, Donegal Mutual Insurance Company is hereby ordered to pay the remaining policy limits of $15,000 in underinsured motorist benefits to Robert J. Allwein, administrator c.t.a. of the estate of Michael A. Allwein, deceased, within 30 days after notice of this order.